[No. 86049-1.   En Banc.]
Argued February 16, 2012.     Decided September 20, 2012.

LOUIS ALEXANDER DIAZ ET AL., *Petitioners*, v. THE STATE OF
WASHINGTON ET AL., *Defendants*, MEDICAL CENTER
LABORATORY, INC., PS, ET AL., *Respondents*.

*Joseph A. Grube* (of *Ricci Grube Breneman PLLC*), for petitioners.

*Jeffrey R. Street* (of *Hodgkinson Street LLC*) and *Mary H. Spillane* and *Daniel W. Ferm* (of *Williams Kastner & Gibbs PLLC*), for respondents.

*Bryan P. Harnetiaux, George M. Ahrend,* and *David P. Gardner* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 WIGGINS, J. — In this medical malpractice case, Louis Diaz seeks a new trial because the trial court admitted evidence that he settled before trial with two of the defendants. Diaz contends that the trial court misapplied RCW 7.70.080, a medical malpractice statute, in ruling the evidence admissible. We agree, concluding that (1) RCW 7.70.080 permits only a settling health care provider, not the nonsettling defendants, to introduce evidence of the settlement; (2) to the extent it deals with settlements, RCW 7.70.080 has been superseded by subsequent statutes that treat settlements inconsistently with subsection .080; and (3) the trial court's reading of RCW 7.70.080 would violate the separation of powers doctrine. However, having found error, we hold that the error was harmless because no settlement evidence was admitted at trial; the issue was a minor feature of a fairly lengthy trial; and the court gave a curative instruction at Diaz's request, which we presume the jury followed. Because the error was harmless, we decline to order a new trial, and we affirm the Court of Appeals.

## FACTS

¶2 Diaz alleges that he was misdiagnosed with cancer of the larynx and as a result underwent an unnecessary surgery.

¶3 In 2004, Diaz had a lump in his throat and went to a hospital in Yakima to have it examined by a doctor. The

doctor performed a biopsy and sent the sample to a pathology lab run by defendant Medical Center Laboratory (MCL). At the lab, pathologist Dr. Jayanthi Kini examined the biopsy specimen but found it to be a "difficult case" to interpret. Clerk's Papers (CP) at 306. Despite her concerns, she returned a definitive diagnosis of cancer.

¶4 Based on this diagnosis and a consultation with Dr. Neal Futran, Diaz decided to undergo surgery to remove his larynx. Dr. Futran successfully performed the surgery at the University of Washington Medical Center (UWMC), removing Diaz's larynx. After the surgery, pathologists examined Diaz's removed larynx along with the original biopsy sample and could not agree whether the original cancer diagnosis had been correct.

¶5 Diaz and his wife Mona brought a medical malpractice action against UWMC, Dr. Futran, Yakima Valley Memorial Hospital Association, MCL, and Dr. Kini. Diaz settled his claims against UWMC and Dr. Futran for $400,000 before trial, but the case proceeded to trial against Dr. Kini and MCL. Diaz moved to exclude evidence of the settlement. The trial court denied the motion, but the trial ended in a deadlocked jury and a new trial began.

¶6 At the second trial, the disputed evidence was ruled admissible. The trial court reversed its previous ruling and said it would admit the settlement evidence (if offered) under RCW 7.70.080 (discussed *infra*). Based on this ruling, Diaz's attorney discussed the settlement in his opening statement.[1] However, the defendants never used or even offered the settlement evidence, and Diaz did not discuss the settlement any further. Near the end of the trial, Diaz asked for, and the court gave, the following curative instruction:

> You have heard evidence that the University of Washington and Dr. Neal Futran were once parties to this litigation and later entered into a settlement with the plaintiffs, paying the

---

[1] The record does not indicate precisely what was said in the opening statement.

plaintiffs $400,000. This evidence should not be used to either (a) assume the University of Washington or Dr. Futran acted negligently to cause damage to the plaintiffs, (b) excuse any liability you find on the part of Dr. Kini or MCL, or (c) reduce the amount of any damages you find were caused by Dr. Kini or MCL. By giving you this instruction, the court does not mean to instruct you for which party your verdict should be rendered.

CP at 301 (Instruction 8). The jury returned a defense verdict, awarding no damages and finding that Dr. Kini and MCL were not negligent. Diaz moved for a new trial but his motion was denied. Diaz appealed, disputing only one issue: whether the trial court erred by ruling admissible evidence that he settled with UWMC and Dr. Futran. The Court of Appeals affirmed in a published opinion, *Diaz v. State*, 161 Wn. App. 500, 251 P.3d 249 (2011), and we granted review, 172 Wn.2d 1010, 259 P.3d 1109 (2011).

## ANALYSIS

¶7 Interpretation of statutes and evidentiary rules is a question of law we review de novo. *Lawson v. City of Pasco*, 168 Wn.2d 675, 678, 230 P.3d 1038 (2010) (statutes); *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (evidentiary rules). A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). A trial court abuses its discretion by misinterpreting a statute or rule. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

### I. Interpreting RCW 7.70.080 and its proviso

¶8 Diaz argues that the trial court erred by ruling settlement evidence admissible under RCW 7.70.080 and that the evidence was *in*admissible under ER 408, which bars admission of settlement evidence generally. Dr. Kini and MCL argue that the trial court was correct to apply RCW 7.70.080 and rule that the evidence could be admitted

and that even if there was error, it was harmless. We agree with Diaz that there was error, but we agree with Dr. Kini and MCL that the error was harmless.

¶9 Interpretation of statutes begins with the plain language. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., PLLC*, 168 Wn.2d 421, 433, 228 P.3d 1260 (2010).

¶10 RCW 7.70.080 allows "[a]ny party" to introduce evidence of compensation received by the plaintiff from "any source":

> Any party may present evidence to the trier of fact that the plaintiff has already been compensated for the injury complained of from any source except the assets of the plaintiff, the plaintiff's representative, or the plaintiff's immediate family. In the event such evidence is admitted, the plaintiff may present evidence of an obligation to repay such compensation and evidence of any amount paid by the plaintiff, or his or her representative or immediate family, to secure the right to compensation. Compensation as used in this section shall mean payment of money or other property to or on behalf of the plaintiff, rendering of services to the plaintiff free of charge to the plaintiff, or indemnification of expenses incurred by or on behalf of the plaintiff. Notwithstanding this section, evidence of compensation by a defendant health care provider may be offered only by that provider.

¶11 We hold that the trial court misapplied RCW 7.70-.080 by failing to give effect to the proviso at the end of the statute: "Notwithstanding this section, evidence of compensation by a defendant health care provider may be offered only by that provider." This is a conciliatory provision allowing health care providers to compensate, or settle claims with, persons who have been harmed by health care services without fear that the settlement might someday be used against them by the plaintiff or a codefendant. Equally, a health care provider may wish to settle a claim confidentially, and the proviso facilitates this by preventing parties (other than the health care provider itself) from introducing evidence of the settlement in open court.

¶12 The trial court did not follow the proviso, ruling that *any party* could introduce evidence of a settlement between UWMC and Diaz. This ruling was error even though no evidence was ever actually admitted under it.

¶13 We reject Dr. Kini and MCL's argument that the proviso does not apply. They contend that the proviso applies only to *defendant* health care providers and that a health care provider who has settled is no longer a defendant. Under this reasoning, as soon as a health care provider settles, the protections afforded by the proviso disappear, jeopardizing confidentiality and allowing codefendants to argue that the injuries were the provider's fault. We agree that the proviso applies only to defendant health care providers, but we refuse to adopt Dr. Kini and MCL's narrow reading of that phrase. A "defendant," according to *Webster's Third New International Dictionary* 591 (2002), is "a person required to make answer in an action or suit in law . . . ." Likewise, according to *Black's Law Dictionary* 482 (9th ed. 2009), a "defendant" is a "person sued in a civil proceeding . . . ." UWMC was required to make answer in this lawsuit and was "sued." When UWMC settled (an outcome our legislature encourages, Laws of 2006, ch. 8, § 1), it did not forfeit the protections afforded by the proviso.

¶14 To hold otherwise would deprive the proviso of most of its usefulness, taking settlements completely out of its purview and applying it only in the rare case where a health care provider compensates a plaintiff while remaining a party defendant. The defendants' interpretation would also blunt the efficacy of confidential settlements between health care providers and patients, encouraging litigation. In short, Dr. Kini and MCL's reading is contrary to the purpose of the proviso. We hold that a "defendant health care provider" includes a health care provider that was previously a defendant and later settled. Accordingly, the trial court should not have ruled evidence of Diaz's prior settlement admissible.

## II. RCW 7.70.080 in context

¶15 An alternative ground supports our interpretation that the trial court erred in admitting evidence of Diaz's settlement with UWMC and Dr. Futran. RCW 7.70.080 conflicts with later-enacted and more specific statutes dealing with the effect of settlement on the claims of an injured party against the defendants remaining in a case.

¶16 At the outset, it is helpful to examine exactly what RCW 7.70.080 does. RCW 7.70.080 supersedes the common law collateral source rule. Under the collateral source rule, no party can introduce evidence that a plaintiff was compensated by some independent source such as worker's compensation, an insurance payout, or welfare benefits. *See Mazon v. Krafchick*, 158 Wn.2d 440, 452, 144 P.3d 1168 (2006). The collateral source rule ensures that the fact finder will not reduce the plaintiff's award because the plaintiff has received compensation from a third party. *Id.*

¶17 RCW 7.70.080 replaces the collateral source rule in medical malpractice cases, as we explained in *Adcox v. Children's Orthopedic Hospital & Medical Center*, 123 Wn.2d 15, 40, 864 P.2d 921 (1993). We said there that the purpose of RCW 7.70.080 is to delegate to the jury the task of determining whether an injured person has already been compensated for the injuries and the task of reducing any verdict by the amount of compensation already paid:

> This statute reserves for the finder of fact—in this case, the jury—the task of examining the extent to which the plaintiff has already been compensated by third parties for the injuries incurred by the defendant and the additional task of offsetting these recoveries from the damages being assessed against the defendant.

*Id. Adcox* was a medical malpractice case; the plaintiff sued medical providers after her 12-week-old child suffered brain damage in the hospital. The defendant sought to present evidence that the plaintiff received collateral source benefits

offsetting the harm, such as state medical and respite care. *Id.* at 40 n.11. The trial judge ruled that the evidence was inadmissible under the collateral source rule. *Id.* at 40-41. But on appeal, we held that RCW 7.70.080 replaced the collateral source rule for medical malpractice actions and the evidence was admissible. *Id.*; *see also Mahler v. Szucs*, 135 Wn.2d 398, 412 n.4, 957 P.2d 632, 966 P.2d 305 (1998). The language of RCW 7.70.080 is self-explanatory: "[a]ny party" can introduce evidence of compensation received from "any source."

¶18 But we do not interpret statutes in isolation. We interpret statutes in pari materia, considering all statutes on the same subject, taking into account all that the legislature has said on the subject, and attempting to create a unified whole. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001).

¶19 Five years after giving the jury the ability to reduce damages by the amount of a prior settlement under RCW 7.70.080, the legislature shifted to the judge the responsibility of reducing damages by the reasonable value of a prior settlement. Under RCW 4.22.060(1), an injured party shall give notice of a proposed settlement to the other parties and to the court. The trial court either finds that the terms of the settlement are reasonable or else determines a reasonable value of the settlement. *Id.* The liability of any nonsettling parties is then reduced by "the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable." RCW 4.22.060(2).

¶20 Accordingly, as of 1981, RCW 7.70.080 authorized the jury in a medical malpractice case to reduce the injured person's damages by the amount of prior settlements, but under RCW 4.22.060, the judge reduced the injured person's damages by the amount of prior settlements or their reasonable value.

¶21 In 1986, the legislature changed course again by providing that the jury must allocate percentages of fault to every party whose fault caused injury to the claimant. RCW 4.22.070. Under the 1986 act, "the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages . . . includ[ing] . . . entities released by the claimant . . . ."[2] RCW 4.22.070(1). The liability of each person found to be at fault is determined by multiplying the total damages by the percentage of fault allocated to that person. *Id.* Any party that had not been released as of trial would be severally liable for the resulting percentage of damages and, under some circumstances, could be jointly and severally liable with all remaining parties whose fault caused any part of the damages. *Id.*

¶22 The 1986 enactment of RCW 4.22.070 rendered irrelevant in most cases the amount paid to the injured person by a settling defendant. Any money received in settlement is no longer to be deducted from the injured person's total damages. Instead, the injured person receives a judgment for damages allocated by the trier of fact to any entities that have not been released.

¶23 The effect of RCW 4.22.070 is well illustrated by our decision in *Washburn v. Beatt Equipment Co.*, 120 Wn.2d 246, 840 P.2d 860 (1992). Plaintiff Washburn suffered massive injuries in an industrial explosion. Before trial, Washburn settled with three entities: Petrolane paid $780,000, Buckeye Gas Products paid $520,000, and Washington Natural Gas paid $210,000, for a total of $1,510,000. *Id.* at 290. Washburn went to trial against the one remaining defendant, Beatt Equipment Company. The jury found that Washburn's damages were $8,000,000 and allocated 80 percent of the fault to Beatt and 20 percent to Petrolane. We

---

[2] A subsequent amendment excluded from the allocation of fault entities immune under the Industrial Insurance Act, Title 51 RCW, and provided that the percentages of fault allocated to all entities must equal the sum of 100. Laws of 1993, ch. 496, § 1.

held that the correct judgment against Beatt was 80 percent of Washburn's total damages, or $6,400,000. *Id.* at 296.

¶24 Under *Washburn*, the amounts paid in settlement by each of the three settling defendants were irrelevant. Although the jury allocated to Petrolane 20 percent of the damages, or $1,600,000, Washburn had released Petrolane for slightly less than half of that amount, or $780,000. And although Buckeye and Washington Natural Gas paid a total of $730,000 in settlement, the jury did not allocate any fault to either and there was no reduction in Beatt's liability for the settlements.

¶25 In *Adcox*, we considered the relationship between RCW 4.22.060 and 4.22.070. Prior to trial, the plaintiffs settled with two doctors for $620,000, plus an advance of $77,500, to be repaid from any funds collected from the hospital. *Adcox*, 123 Wn.2d at 21-22. At trial, the plaintiffs argued for offsetting these settlements against any eventual damages awarded by the jury, consistent with RCW 4.22.060, while the hospital argued for allocation of fault to the settling doctors, consistent with RCW 4.22.070. 123 Wn.2d at 22-23. The trial court tentatively ruled that it would offset the settlements against any eventual award of damages. *Id.* at 23. The hospital never presented any evidence or offer of proof that the doctors were at fault; rather, the hospital's position was that no one was at fault. *Id.*

¶26 In light of the absence of any evidence from the hospital that the settling doctors were at fault, we held that RCW 4.22.070 is not "self-executing." 123 Wn.2d at 25. We noted, "Without a claim that more than one party is at fault, and sufficient evidence to support that claim, the trial judge cannot submit the issue of allocation to the jury." *Id.* Accordingly, we affirmed the trial court's decision to offset the settlements under RCW 4.22.060.

¶27 In short, RCW 7.70.080, 4.22.060, and 4.22.070 establish three different procedures for accounting for prior settlements in medical malpractice actions:

- RCW 7.70.080 calls for presenting evidence of prior settlements to the trier of fact, usually the jury, and allowing the trier of fact to reduce any damage award by the amount of any prior settlements;
- RCW 4.22.060 delegates to the trial judge the task of deducting from any damage award the amount of any prior settlements;
- RCW 4.22.070 ignores the amount of any prior settlements and requires the trier of fact, usually the jury, to allocate fault to each at-fault party and to allocate liability for damages based on allocation of fault. Fault can be allocated to defendants still in the case, defendants who have been released, and even to entities who were never brought into the case at any time.

¶28 It is impossible to give effect to all three statutes. If the jury is allowed to reduce the injured party's damages by the amount of prior settlements under RCW 7.70.080, then the trial court should not again reduce the damages by the same amount under RCW 4.22.060 because that would result in a double reduction of the damages. And if the jury reduces damages under RCW 7.70.080, then the trial judge should not again reduce damages based on the allocation of fault under RCW 4.22.070 because that would again result in the duplicate reduction of damages.

¶29 It could be argued that either party can decide which statute the party wishes to follow. But nothing in the statutory scheme suggests that the legislature gave the parties this choice. To the contrary, RCW 4.22.060 is cast in mandatory terms: a settling plaintiff "shall" give notice of a settlement, a reasonableness determination "must be secured," and any claim remaining after settlement "is reduced" by a reasonable settlement or "shall be reduced" by an amount found reasonable. RCW 4.22.070 is similarly phrased in mandatory terms: the trier of fact "shall determine" allocations of fault and judgment "shall be entered" consistent with the allocation of fault.

¶30 When two (or more) statutes conflict, as here, we resolve the conflict by giving preference to the statute that is more specific and more recently enacted. *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000). Here, RCW 4.22.060 and .070 are more recent, having been adopted in 1981 and 1986, 5 and 10 years, respectively, after RCW 7.70.080. They are also more specific, dealing specially with the effect of prior releases and settlements on the determination of an injured person's damages. In contrast, RCW 7.70.080 is not limited to settlements and the entry of judgment but addresses every type of compensation that a plaintiff might receive. Since RCW 4.22.060 and .070 are more specific than RCW 7.70.080, they control. *Tunstall*, 141 Wn.2d at 211.

¶31 Applying RCW 4.22.060 and .070 to this case, we conclude that the judge should not have ruled that the jury could hear evidence of Diaz's settlement with UWMC and Dr. Futran. Instead, the settlement should have been handled under the scheme set forth in those statutes and explained in *Adcox*. 123 Wn.2d at 25-26. We conclude once again that the trial court's ruling was in error.

III. RCW 7.70.080 and ER 408

¶32 Our conclusions that the trial court misapplied RCW 7.70.080 and that RCW 4.22.060 and .070 have superseded RCW 7.70.080 avoids a conflict between the statute and one of our court rules. ER 408 bars the admission of settlement evidence to prove liability for or invalidity of a claim or its amount, but not for "another purpose":

> In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule also does not require exclusion when

the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The rule is intended to encourage settlements and promote free communication in compromise negotiations. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 408.1, at 59 (5th ed. 2007). ER 408 bars admission of evidence of settlements with a former codefendant. TEGLAND, *supra*, § 408.6, at 67 (citing *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161 (5th Cir. 1983); *Grigsby v. City of Seattle*, 12 Wn. App. 453, 529 P.2d 1167 (1975)).

¶33 If settlement evidence was admissible under RCW 7.70.080, as the trial court ruled, there would be yet another conflict because settlement evidence is *in*admissible under ER 408[3] and applying the statute and applying the evidence rule would produce contrary results, raising separation of powers concerns. *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974, 980, 216 P.3d 374 (2009). Under our separation of powers jurisprudence, when a statute appears to conflict with one of our evidence rules and they cannot be harmonized, the statute must yield to the rule on a procedural issue such as the admissibility of evidence. *Id.* Given the conflict between ER 408 and the trial court's interpretation of RCW 7.70.080, the statute should have yielded to the evidence rule. Thus, the trial court erred by admitting the evidence.

¶34 However, Diaz asks us to do more than just recognize that the trial court erred. He asks us to reverse the jury

---

[3] MCL and Dr. Kini argue that ER 408 does not bar admission of the settlement evidence here because the evidence would be used for "another purpose" ("to avoid *over*compensation"), not to prove liability for a claim or its amount. Resp't's Suppl. Br. at 11. It is absurd to say that avoiding overcompensation is "another purpose" distinct from disputing the amount of a claim. The whole point of admitting evidence under RCW 7.70.080 is to allow the jury to reduce the plaintiff's damages, and reducing damages alters the amount of the claim. In other words, RCW 7.70.080 goes straight to the heart of the "amount" of the claim and is not "another purpose."

verdict in this costly and lengthy trial that has already been retried once before. He asks us to do so despite the fact that the settlement evidence was mentioned only once in the trial (by Diaz, no less) and settlement evidence was never actually admitted into evidence.

IV. Harmless error

¶35 We decline Diaz's invitation to overturn the jury's verdict. We do not reverse a verdict based on an evidentiary error unless the error was prejudicial. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). An error is not prejudicial unless it affects, or presumptively affects, the outcome of the trial. *Id.*

¶36 The error here did not affect the outcome of the trial. The sole issue at trial was whether Dr. Kini met the standard of care in interpreting Diaz's biopsy. The trial was essentially a "battle of the experts" in which the two sides disputed (1) whether Diaz's biopsy supported a diagnosis of cancer, (2) whether there actually was cancer, and (3) whether Dr. Kini should have returned a different diagnosis. The testimony was scientific in nature, focusing on facts such as the diagnostic differences between squamous cell carcinoma and carcinoma in situ. The jury's sole task was to decide whether Dr. Kini exercised the degree of care, skill, and learning expected of a reasonably prudent pathologist.[4]

¶37 Evidence of the settlement between Diaz, Dr. Futran, and UWMC would have had almost no bearing on the jury's task. Nothing at trial linked Dr. Kini's fault to Dr. Futran's or to any actions by UWMC. In fact, the trial court refused to allow an "empty chair" defense and would not even admit evidence of events subsequent to Dr. Kini's interpretation. No evidence was admitted at trial suggesting that Dr. Futran or UWMC negligently caused Diaz's injury or suggesting that Dr. Futran or UWMC was an intervening cause reliev-

---

[4] Had the jury answered this question in the negative, it would have also been required to make findings on proximate cause and damages.

ing Dr. Kini of liability. The jury was called upon to examine Dr. Kini's actions and her actions alone, with no suggestion by either side that Dr. Kini's liability was in any way tied to the actions of Dr. Futran or UWMC.

¶38 Further, the settlement evidence was such a minor feature of the trial that it could scarcely have impacted the jury's determination of nonliability. The settlement came up only twice during the trial. First, Diaz's counsel mentioned it in opening statement, apparently anticipating that the defense would introduce settlement evidence at some point during trial (it did not). Although the record does not reflect precisely what was said in opening statement, it is undisputed that this was the only mention of settlement evidence to the jury by either attorney. Second, despite the fact that no settlement evidence was ever admitted, Diaz's counsel asked for, and received, the following curative instruction:

> You have heard evidence that the University of Washington and Dr. Neal Futran were once parties to this litigation and later entered into a settlement with the plaintiffs, paying the plaintiffs $400,000. This evidence should not be used to either (a) assume the University of Washington or Dr. Futran acted negligently to cause damage to the plaintiffs, (b) excuse any liability you find on the part of Dr. Kini or MCL, or (c) reduce the amount of any damages you find were caused by Dr. Kini or MCL. By giving you this instruction, the court does not mean to instruct you for which party your verdict should be rendered.

CP at 301 (Instruction 8), 308. Diaz argues that the brief mention in opening statement (by his own counsel) and the curative jury instruction (requested by Diaz) so tainted this lengthy jury trial that the trial should be completely redone—including all the expense of empaneling a new jury, recalling expert witnesses, and putting the parties

through an ordeal they have already endured twice.[5] In examining evidentiary errors, we do not check our common sense at the door. We hold that the trial court's error was harmless.

¶39 In fact, a detailed examination of the record reveals that there was no prejudice as a matter of law. The error was an evidentiary ruling and no evidence was ever actually admitted under the ruling. The jury returned a defense verdict after having been specifically instructed not to consider settlement evidence to determine liability, an instruction we presume the jurors obeyed. *Bordynoski v. Bergner*, 97 Wn.2d 335, 342, 644 P.2d 1173 (1982).

¶40 There are only two possible ways the settlement evidence could have affected the outcome of this trial, and we can categorically rule out both of them. First, the jury could have used settlement evidence to change its assessment of damages. However, we can be certain that this did not occur here because the jury returned a defense verdict and did not even reach damages. Thus, as a matter of law, there was no prejudice based on damages. Second, the evidence could have affected the outcome if the jury used it to change its assessment of liability. But as a matter of law, this did not occur either. Washington courts have, for years, firmly presumed that jurors follow the court's instructions. *Id.*; *Gardner v. Spalt*, 86 Wash. 146, 149, 149 P. 647 (1915). This is true not only in civil cases but in criminal cases as well where the stakes are potentially higher, *see State v. Lough*, 125 Wn.2d 847, 864, 889 P.2d 487 (1995), and even in death penalty cases where the stakes are as high as they could possibly be. *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991). Here, the jury was specifically instructed not to consider settlement evidence in determining liability:

---

[5] It could be argued that the curative instruction was at most invited error. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984). Diaz asked for the curative instruction below, and he should not now be able to argue that the instruction entitles him to a new trial. But we decline to rest our decision on invited error, which was not argued by the parties. *See State v. Schaler*, 169 Wn.2d 274, 291-92, 236 P.3d 858 (2010).

"This evidence should not be used to either (a) assume the University of Washington or Dr. Futran acted negligently to cause damage to the plaintiffs [or] (b) excuse any liability you find on the part of Dr. Kini or MCL . . . ." CP at 301 (Instruction 8). As a matter of law, we presume the jurors in this case followed this instruction. Accordingly, we hold that the settlement evidence here did not prejudice the jury's assessment of liability.

¶41 Diaz argues that settlement evidence has a "corrosive" effect on the jury that requires reversal irrespective of the fact that it had no identifiable effect on this case as a matter of law, citing *Northington v. Sivo*, 102 Wn. App. 545, 550, 8 P.3d 1067 (2000). But even in *Northington*, this argument was rejected—the admission of settlement evidence in that case was deemed harmless and the court refused to overturn the jury's verdict. *Id.* at 551-52. In this case, the "corrosive" argument makes even less sense because the evidence was mentioned only once at trial (even then by the plaintiff's attorney), no evidence was admitted, and the jury was instructed not to consider the evidence by an instruction that the plaintiff specifically requested. We reject Diaz's argument just like the Court of Appeals in *Northington*.

¶42 Diaz was not prejudiced by the trial court's error. Although we hold there was error, we also hold that the error was harmless. Diaz is not entitled to a new trial, so we affirm the Court of Appeals.

C. Johnson, Owens, Fairhurst, J.M. Johnson, Stephens, and González, JJ., and Worswick, J. Pro Tem., concur.

Madsen, C.J., concurs in the result only.