IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32290-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK J. McALLISTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Patrick McAllister appeals his 31 convictions for rape and assault of his fiancée, a young woman whom he courted and brought to Washington from the Philippines. We reverse one count of rape due to insufficient evidence, and affirm the remaining counts after concluding that any errors in the prosecutor's closing argument did not amount to prejudicial misconduct.

FACTS

Mr. McAllister was friends with Temur Perkins, a fellow resident of Jefferson County. Mr. Perkins was married to Rosemarie, a native of the Philippines. The Perkins's had met and married in that country before moving to Port Townsend where their children were born. Rosemarie Perkins introduced Mr. McAllister to her younger sister, S.L., over the telephone.

Mr. McAllister and S.L. began a telephone relationship with him calling her regularly over the next six to eight months. He then went to the Philippines to meet her and her family. She accepted his marriage proposal and moved to Manila from her village in Leyte in order to facilitate obtaining a visa to enter the United States.

She received a K-1 fiancée visa, which required her to marry within 90-days of entering the United States. She arrived in this country in the spring of 2010. At that point she was approximately 21 years of age and Mr. McAllister was approximately 47. The two took up residence at Mr. McAllister's home in rural Jefferson County.

Accounts of what transpired after that vary dramatically. Due to her religious upbringing, S.L. did not believe in pre-marital intercourse and refused Mr. McAllister's sexual advances. She described a litany of sexual abuse occurring over a 37-day period that included forcible and non-consensual intercourse of various varieties and numerous instances of assault, some of which occurred after sexual encounters and some that were unrelated. In contrast, Mr. McAllister testified that the couple was happy and had engaged in voluntary sexual intercourse on several occasions. He denied being physically able to kick S.L. as she had alleged occurred several times.

The defense theory at trial was that S.L. made up the story of abuse in order to stay in the country under a U visa. An attorney, Elizabeth Li, testified as an expert for the defense concerning how a person coming to this country on a K-1 fiancée visa could stay in the country under a U visa in order to assist in a prosecution of an abuser. Ms. Li

2

testified that many who remain in the country under a U visa subsequently are able to obtain permanent residency status, although there is a quota on the number of people who can do so. She testified that the majority of her practice was in business immigration, but that 40 percent involved "family cases. So that's just immigration that's related to having a family member in the United States." Report of Proceedings (RP) at 476.

The case was argued by the parties on the basis of credibility. The prosecutor emphasized that Mr. McAllister was a controlling person who never left S.L. alone with others and used "medicine" to perpetrate the sexual abuse. In contrast, the defense presented photographic evidence that suggested the pair were a happy couple who visited others and that S.L. made up the abuse allegations in order to gain permanent residency status and live near her sister. Defense counsel argued that the only option for S.L. to stay in the United States was to claim to be the victim of a crime. RP at 676.

In rebuttal, the prosecutor took issue with the immigration motivation argument. He argued that she did not need a U visa to seek residency due to her sister:

> [Prosecutor]: And I'll, and then they, they talk about her incentive to lie. Well, she has an incentive to lie because she wants to stay here. This is all part of her, her very, very clever plan to get here and stay. Well, you know, that's okay except there's a little problem with that. Her sister is a United States citizen. She came from the Philippines. . . . Her sister could sponsor her, you know? Ms. Li didn't tell you that, you know? So that's another one.
> [Defense Attorney]: Objection, Your Honor. This is outside of anything in evidence in this case and it's untrue.
> [Prosecutor]: Well, because . . .
> COURT: Ladies and gentlemen of the jury, I'll remind you, the attorney's remarks, statements and arguments are not evidence.

3

[Prosecutor]: Well, I'll say (inaudible). We'll get to that part where they're talking about Ms. Li. How Ms. Li on the stand told you all the ways she could legally stay in this country. But she didn't tell you about the other way.

. . . .

But she didn't tell us about how many people do come to this country through normal channels. They apply for entry into the United States. They're sponsored by family members. People who are other citizens. She didn't tell us that. She said, you know, the question to her was, you know, how do they come here and what are their options?

RP at 687-88, 694.

The Prosecutor also went on to indicate that S.L. did not have to cooperate in the prosecution and could still maintain on the U visa:

[Prosecutor:] And Li even said, Ms. Li even said, that [S.L.] doesn't need to stay to get a conviction in order for her to stay here on this new visa. So, you know, she could refuse to cooperate. She could refuse to testify. She could say, you know, I just can't do this. Please don't make me testify. Please don't make me do this. I don't want to get up in front of a room full of strangers and tell them this stuff. I just can't do it. And that happens all the time in courtrooms around this country.

RP at 697.

The prosecutor also addressed Mr. McAllister's testimony that he had a bad ankle and knee by arguing that there was no medical corroboration:

[Prosecutor:] But let's talk about those medical records. Oh, wait, there are no medical records. Wouldn't you expect there to be medical records? Who controls the medical records? I don't control the medical records. No testimony from the defendant as to what he was operated on [sic]. He told you, "I've had a knee replacement." Did he tell you the date? Was it last year? Was it six months ago? Was it six years ago? He didn't tell you that. Who controls that information? Not me.

4

> No doctor to come testify about his mobility. Oh, yes. I was the doctor treating Mr. McAllister back in 2010 and I'm here to testify and tell you as his doctor . . . .
>
> . . . .
> When [defense counsel] is asking Mr. McAllister on the stand, on the direct, I mean he is his witness. And they're talking about this injury. I don't recall any questions from [defense counsel], when did you have this operation?

RP at 689-90.

The defense objected to the argument as "burden shifting." RP at 690. The court again cautioned the jury about attorney remarks. *Id.* After the jury had retired to deliberate, the trial judge told defense counsel that he did not consider the argument to be burden shifting because the prosecutor was not talking about "something they have to prove." RP at 700.

The court permitted 31 of the 40 counts to go to the jury. The jury returned guilty verdicts on all 31 counts, found that each charge involved domestic violence, and also found that the rapes were committed with the aggravating factor of deliberate cruelty. In total, the jury found Mr. McAllister guilty of 13 counts of rape in the second degree, 10 counts of rape in the third degree, and 8 counts of assault in the fourth degree.

The trial court imposed a minimum sentence of 250 months on the second degree rape counts, concurrent standard range terms of 60 months on the third degree rape counts, and concurrent one year terms on the assault counts. Mr. McAllister then timely appealed.

5

ANALYSIS

Mr. McAllister argues on several grounds that the prosecutor committed misconduct and that his counsel performed ineffectively. He also argues that his right to present a defense was impaired, the evidence was insufficient to support the second degree rape allegation in count 18, and that third degree rape cannot constitute a crime of domestic violence. We will address those arguments in the stated order.[1]

*Prosecutorial Misconduct*

Mr. McAllister strenuously argues that the prosecutor committed misconduct, largely in his rebuttal argument, that deprived him of a fair trial. In particular, he alleges that the prosecutor argued facts not in evidence, improperly shifted the burden to the defense, and made references to the jury's personal experiences, with the cumulative effect of these actions requiring a new trial. While there may have been some error, it did not prejudice the defense.

Well understood standards govern our review of this claim. The general rule is that a prosecutor can properly draw reasonable inferences from the evidence admitted at trial and argue those inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991); *State v. Hale*, 26 Wn. App. 211, 216, 611 P.2d 1370 (1980),

---

[1] Mr. McAllister personally filed two Statements of Additional Grounds. The arguments largely address the prosecutorial misconduct and ineffective assistance claims that are adequately addressed by counsel. *See* RAP 10.10(a). The other allegations of court error are not sufficiently argued to explain the claim of error and alleged prejudice. RAP 10.10(c). We accordingly will not further address them.

*review denied*, 95 Wn.2d 1030 (1981). The prosecutor can also argue that the evidence does not support the defendant's theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). "Mere appeals to jury passion and prejudice, as well as prejudicial allusions to matters outside the evidence, are inappropriate." *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). However, the defendant must object to the prosecutor's allegedly improper argument to preserve a claim of error unless the argument was so "flagrant and ill intentioned that no curative instructions could have obviated the prejudice." *Id.* When improper argument is alleged, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect. *Hoffman*, 116 Wn.2d at 93.

In determining whether prosecutorial comments have denied the defendant a fair trial, a reviewing court must decide whether the comments are improper and, if so, whether there is a substantial likelihood that the comments affected the verdict. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). "Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given." *State v. Graham*, 59 Wn. App. 418, 428, 798 P.2d 314 (1990). A failure to object to an improper remark constitutes a waiver unless the comment is flagrant and ill-intentioned and the resulting prejudice so enduring that jury admonitions could not neutralize its effect. *State v. Charlton*, 90 Wn.2d 657, 661, 585 P.2d 142 (1978).

It also is inappropriate for a prosecutor to suggest that the defendant bears any burden of proof. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 728-29, 899 P.2d 1294 (1995). However, once a defendant presents evidence, a prosecutor can fairly comment on what was not produced. *State v. Barrow*, 60 Wn. App. 869, 871-73, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991); *State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114, *review denied*, 115 Wn.2d 1014 (1990).

With these principles in mind, we turn to Mr. McAllister's arguments. He contends that the prosecutor's argument about S.L. having her sister sponsor her was not supported by the record, while the prosecutor argues that it was a reasonable inference from the testimony of Ms. Li who had testified that 40 percent of her work was helping family members lawfully enter the country.[2] While it may have been a reasonable inference from Li's testimony that there were other processes that might have been available for S.L. to gain residency in the United States, there was no testimony that her sister could sponsor her or otherwise help her lawfully remain in the country. Thus, there was no factual support in the record for the argument that her sister was a basis for S.L. remaining in the country.

The error, however, was not prejudicial. Immediately upon hearing the objection, the trial court reminded the jury that an attorney's argument is not evidence. The prosecutor

---

[2] It appears that the parties argue the word "stay" from two different perspectives— the defense using the word to mean "remain" in the country while the prosecution used it to mean "immigrate" and obtain permanent residency status.

did not dwell on the point, but moved on to the next stage of his argument. Furthermore, the prosecutor's statement told the jury that there was no factual basis for his argument when he told the jurors that "Ms. Li didn't tell you that." RP at 687. The trial court's reminder to the jury—an instruction that we have to assume the jury followed—in conjunction with the admission that there was no factual basis adequately addressed the error. In the context of the prosecutor's lengthy argument, this error was harmless.

Mr. McAllister also contends that the prosecutor argued outside the record of the case when he generalized about domestic violence situations where the abuser uses mental and physical abuse to "control them by fear and intimidation." RP at 648. He argues that there was no expert witness testimony to explain the process for jurors. We need not decide whether the overall effects of the domestic violence control process are commonly understood[3] so that they need not be the subject of expert testimony since there was no objection to the prosecutor's statement. Even if beyond the record of the testimony, there was nothing so "flagrant and ill intentioned" that it created irremediable harm. *Russell*, 125 Wn.2d at 86. The challenged statement does not directly speak to evidence outside the record and we believe that a timely objection would have clarified the point. Having failed

---

[3] Expert testimony usually is only needed to explain "counter-intuitive" behavior by an alleged victim. *E.g., State v. Ciskie*, 110 Wn.2d 263, 274, 751 P.2d 1165 (1988) ("battered woman syndrome" testimony permitted to explain why victim would stay with accused abuser).

to do so below, Mr. McAllister's bald argument that this statement was "flagrant and ill intentioned" is insufficient to carry his burden in this proceeding.

Mr. McAllister also contends that the prosecutor argued outside the record when he stated that S.L. "could refuse to cooperate. She could refuse to testify." RP at 697. This challenge fails for several reasons. First, the essence of the defense argument is that S.L. was required to continue cooperating once she received her U visa. However, Ms. Li never testified to the factual basis for that argument. Ms. Li testified that S.L. needed to cooperate to obtain a U visa and that once obtained it was good for four years. RP at 481-83. She did not testify that if S.L. stopped cooperating after obtaining the visa that it was subject to immediate withdrawal resulting in S.L. having to leave the country. In re-direct and re-cross-examination, Ms. Li admitted that the visa remained good even in cases where the prosecution did not proceed despite the cooperation of the victim. RP at 499-500. Based on Ms. Li's testimony, the prosecutor was within the record when he argued that S.L. had no continuing duty of cooperation once the visa issued.

Second, as the prosecutor's remarks on the following page make clear, the noted statements were argued as part of a general discussion of the credibility of the witnesses who came forward rather than as a statement of the law governing the visas. RP at 697-98. For instance, S.L. was able to withdraw from cooperating, but chose to continue despite fear or embarrassment. As she would still be in the country for another year or two on the U visa regardless of whether she continued to help or not, the

prosecutor urged the jury to find her credible. This was a proper argument given the testimony and was not a statement of matters outside the record.

Finally, defense counsel did not object to these arguments. Thus, they could only be a basis for relief if they were ill intentioned and not subject to cure from objection. That is not the case in this instance, either. To the extent that the defense thought the prosecutor was outside the record, an objection would easily have cured the matter.

None[4] of the appellant's contentions that the prosecutor argued matters outside the record have merit. These arguments do not present a basis for relief.

Mr. McAllister also argues that the prosecutor committed misconduct by shifting the burden to the defense when the prosecutor asked why the defense had not presented medical records to support his testimony that his physical limitations precluded assaulting S.L. in the manner she described. There was no error. As noted before, the prosecutor is allowed to comment on the merits of the defendant's proof once the defense undertakes to prove a claim. In *Barrow*, for instance, the defendant contended that the pipe containing drug residue in his possession was one that he had borrowed from his brother without

---

[4] Appellant also argues that the prosecutor erred by challenging the defendant's testimony that he took S.L. to an "immigration doctor" for tuberculosis testing by claiming "that's probably taken care of at the U.S. Embassy before they even granted her a K visa." RP at 694. Other than being an ineffectual argument (even if tested overseas, an immigrant can be tested again after arrival to confirm that no diseases have been acquired in the interim) that was also contrary to the testimony of S.L., the challenged argument is not a statement of fact. The prosecutor did not say that S.L. had been tested in the Philippines or that she had not been tested in the United States. A bad argument is not necessarily an improper assertion of fact.

realizing it had drugs in it. 60 Wn. App. at 870-71. It was proper for the prosecutor to argue in rebuttal "where is his brother?" and emphasize the failure of the defense to call the brother as a witness. *Id.* at 871. In *Contreras*, the defense had personally provided his alibi explaining who he was with during the crime at issue. 57 Wn. App. at 472-73. The prosecutor cross-examined the defendant about not calling as witnesses the people he claimed to be with, and then argued that point in closing. *Id.* at 473. This court agreed that the prosecutor could properly make the argument. *Id.* at 476.

In light of these authorities, we agree with the trial court that the prosecutor did not attempt to shift the burden of proof to the defense when he asked in closing argument why there was no medical corroboration for Mr. McAllister's contention that he was too physically limited to have assaulted S.L. This was an appropriate argument.

Mr. McAllister also argues that the prosecutor shifted the burden when it asked why the defense did not present letters written by S.L., and apparently left at the defendant's home, after defense counsel had cross-examined S.L. at some length about information written in one of those letters. Unlike the previous challenge, the defense did not object to the prosecutor's statement. As with the previous example, it was fair game for the prosecutor to ask why S.L. was being examined about only one of the letters when she testified that there were many others in the possession of the defense. The failure to object to this statement also precludes any complaint about it now since it does not amount to flagrant and ill intentioned misconduct.

12

Both of Mr. McAllister's claims that the prosecutor shifted the burden are without merit. He also contends that the prosecutor's comments on the dynamics of domestic violence, discussed previously as an argument based on facts outside of the record, also amounts to the prosecutor erroneously appealing to the jurors' personal experience. As noted previously, there was no objection to the statement. Having previously decided that this statement was not so clearly misconduct as to excuse the need to object, we need say little more than to note that changing the label does not convert the statement to a flagrant and ill intentioned one. If there was a perception that the prosecutor erred in making the statement, the time to complain was when the trial court easily could have countered the problem. Veteran trial counsel apparently did not see it as a problem of consequence to the case, and neither do we.

Mr. McAllister has not established that the prosecutor committed misconduct in closing argument, let alone that he was harmed by the alleged misconduct. Accordingly, his claims are without merit.

*Ineffective Assistance of Trial Counsel*

Mr. McAllister next argues, also on several theories, that his counsel failed to provide effective assistance at trial. He once again fails to meet his burden in these arguments.

Again, well settled standards govern our review of this claim. The Sixth Amendment right to counsel requires more than the mere presence of an attorney. The

13

attorney must perform to the standards of the profession and failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-92. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Mr. McAllister argues that his counsel provided ineffective assistance by failing to object to prosecutorial misconduct, failing to offer medical records to corroborate his testimony, failing to make an offer of proof, and failing to object to some evidence. We will address, in some cases summarily, the claims in the noted order.

The claim of counsel error in failing to challenge some parts of the prosecutor's argument is one claim that can be addressed summarily. Having found that Mr. McAllister did not establish error by the prosecutor, there is no basis for concluding that counsel's failure to object was error or that Mr. McAllister was prejudiced by his attorney's action.

14

Similarly, there is no basis for believing counsel erred in failing to corroborate his client's testimony concerning his alleged physical deficiencies. There is nothing in the record[5] indicating that there is any medical evidence that would corroborate Mr. McAllister's testimony. There also is nothing suggesting that counsel even knew such evidence existed at the time of trial.[6] On this record there is no showing that counsel erred.

A third alleged deficiency involves a failure of counsel to persuade the court to admit impeachment evidence. Although we discuss the merits of this issue separately in the next section of our analysis, we do note that counsel attempted to admit evidence that defense witness Geraldo Sabiniano had been threatened in the Philippines, supposedly by family members of S.L., for agreeing to testify on behalf of Mr. McAllister. The court

---

[5] If Mr. McAllister is to present such a claim, he will have to proceed by way of a personal restraint petition in which he can make a record of his evidence and his counsel's knowledge of that information before trial. *See, e.g., State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

[6] After trial, defense counsel received Mr. McAllister's medical records from the counsel representing him in his worker's compensation actions with the Department of Labor and Industries. Although the records show that Mr. McAllister before and after the charging period had difficulties with his right knee and ankle, causing severe pain, nothing in the record expressly states that he was unable to kick another person. The records also include mention of a surveillance tape in which Mr. McAllister was seen to limp only when in the presence of others, but to walk normally otherwise. One report also references a prior diagnosis of malingering. Defense counsel did not use these records in support of the motion for a new trial, but instead presented them as part of the sentencing memorandum.

15

rejected the evidence on relevance grounds. RP at 452-53. Defense counsel later submitted the information as part of the defense motion for a new trial.[7]

We know of no theory by which the attorney is a guarantor of the court reaching a party's desired outcome. Counsel attempted to admit the evidence. The trial court was not persuaded. The propriety of that decision is subject to review on its merits. Counsel's presentation of the issue to the court could only constitute ineffective assistance if the defendant could establish that the trial court would have ruled differently but for counsel's argument. With discretionary rulings (such as most evidentiary issues), it would be extremely unlikely that a defendant could meet this standard.

We need not opine on that possibility in this case, however, as the trial court did consider and reject the evidence in the new trial motion. Even if counsel could have made a better offer of proof at trial, he did make an offer of proof in the motion for a new trial. The trial judge continued to be unimpressed. There simply is no reason to believe that the court would have ruled differently if it had faced the same offer of proof initially at trial. Accordingly, the ineffective assistance claim fails due to the failure to establish that counsel erred.

The final claim of ineffective assistance involves four instances in which defense counsel allegedly should have raised objections to testimony. Before addressing the specific evidentiary questions, we note that as a general principle the decision whether or

---

[7] Appellant has not assigned error to the trial court's denial of the new trial motion.

not to object to evidence is a classic example of trial tactics, an area that *Strickland* indicates[8] is not a basis for finding counsel performed ineffectively. *E.g.*, *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989) ("The decision of when or whether to object is a classic example of trial tactics."). A reviewing court presumes that a "failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007) (citing cases). Mr. McAllister has not satisfied his obligation to establish that the failures to object were not trial tactics.

The complaints he makes also do not establish any error by counsel, let alone that the errors substantially prejudiced the defense. His initial challenge is an argument that counsel should have objected to a detective's testimony when she stated that Temur Perkins told her that his wife reported that S.L. stated Mr. McAllister had repeatedly raped her. If offered to prove that Mr. McAllister had raped S.L., this statement constituted multiple levels of hearsay. In context, however, the statement was not offered to prove the truth of the statement and, thus, did not constitute hearsay. ER 801(c); *State v. Edwards*, 131 Wn. App. 611, 613-14, 128 P.3d 631 (2006) (statement offered to prove effect on listener was not offered to prove truth of statement). Here, the statement in question was related to the detective to show why she began to investigate a rape case instead of provide the civil "standby" assistance to S.L. for which she had been dispatched. It was quite

---

[8] *Strickland*, 466 U.S. at 689-91.

understandable why defense counsel did not object. In context, this was not a hearsay statement.

Mr. McAllister next contends that his counsel should have objected when S.L. testified that Rosemarie Perkins stated S.L.'s vagina did not appear normal. In context, the evidence was not used as a diagnosis by Ms. Perkins, but simply an explanation why, after this statement by her sister, S.L. was taken to the hospital for a medical examination. Even if offered for the purpose of proving that the vagina was not normal, however, it appears that the statement was admissible as Ms. Perkins's present sense impression. ER 803(a)(1). For both reasons—the statement was not offered for the truth of the assertion and, even if it was, an exception applied—counsel understandably would not object.[9]

Mr. McAllister next argues that counsel should have objected when Nurse Jolene Culbertson identified her position as a sexual assault nurse practitioner. The identification occurred after the court had denied a defense motion in limine that would have prevented her from describing her position. RP at 39. Having already preserved any error claim, we do not see why counsel needed to object to the testimony, and the failure to object also could not have harmed Mr. McAllister in the least. His issue, if he

---

[9] There also was a tactical reason to not object. The parties had agreed not to raise the topic of sexually transmitted diseases before the jury and understandably defense counsel would not want to highlight the matter by objecting. RP at 36-37.

wanted to pursue it, involved the court's rejection of his motion in limine rather than his counsel's failure to object after losing the motion.[10]

The final claim[11] is that counsel should have objected when Temur Perkins used references to "Dove House" after he was precluded from mentioning that name during his testimony.[12] RP at 245. The parties had agreed to an order in limine precluding reference to the fact that S.L. was receiving domestic violence services from Dove House. RP at 39-40. However, the topic twice came up when the defense was cross-examining Perkins concerning who had aided S.L. and where he had seen her after she left Mr. McAllister. Once again, we believe that counsel understandably would not want to highlight the fact that S.L. was receiving services from domestic violence organizations after separating from his client. Although he did not technically violate the motion in limine by referring to Dove House by another name, Mr. Perkins's chosen sobriquets did not show him in a good light to the jury and counsel also might have decided that there was no harm to the

---

[10] We also doubt that Mr. McAllister could possibly overcome the presumption of trial tactics in this circumstance. Having failed to exclude the topic in limine, counsel again reasonably could decide not to highlight the nurse's position by objecting in front of the jury.

[11] Mr. McAllister also contends that the cumulative effect of counsel's errors indicate that he provided ineffective assistance. Since there were not multiple errors by counsel, we will not address this argument other than to note it is redundant. The *Strickland* standards already require that counsel's actions be evaluated as a whole, so there is no need to consider once again the cumulative effect of counsel's actions. 466 U.S. at 690-92.

[12] Perkins referred to Dove House as "the unsayable word" and "the unmentionable name." RP at 245, 249.

19

defense from Perkins essentially expressing frustration with the court's ruling. Counsel did not fail his client by not objecting to these trivial statements by Mr. Perkins.

Mr. McAllister has not overcome the presumption that his counsel was engaging in tactics by failing to object in these noted instances. He likewise has not shown that counsel erred in any manner or that he suffered harm from counsel's alleged failings. For all of these reasons, he has not established that his counsel provided ineffective assistance at trial.

*Evidentiary Rulings*

Mr. McAllister also takes issue with some rulings by the trial court that we group under the heading of evidentiary rulings. He again fails to establish any error by the trial court, let alone prejudicial error entitling him to a new trial.

A trial court had great discretion in the admission or exclusion of evidence. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). An erroneous application of the law is an abuse of discretion. *Diaz*, 175 Wn.2d at 462.

Mr. McAllister first argues that the trial court erred in permitting Rosemary Perkins to state that she had told S.L. that she could go or stay, but that she would not be happy in the United States in light of what happened. The trial court overruled a defense hearsay objection. There was no error. We do not see this statement as being offered to

prove the truth of the assertion—S.L. would not be happy—but as simply an indication of the advice given by a big sister to a little sister. It was marginally relevant given the motive theory being presented by the defense, but we cannot say that the trial judge abused his discretion in rejecting a hearsay objection. *Id.*

Mr. McAllister also argues that the court did abuse its discretion by overruling his objection to Temur Perkins's statement that he had seen Mr. McAllister walking normally at the "initial restraining order hearing here at the courthouse." RP at 581. The defense claimed this violated an order in limine. It is very questionable whether or not the court even entered an order addressing the topic. The defense motion referencing prior hearings was one of four items grouped under the heading of "404(b) evidence." Clerk's Papers (CP) at 37. When addressed by the court and parties, the sole focus was on the first two aspects of the motion—prior allegations of rape and sexual misconduct by Mr. McAllister and his prior convictions. RP at 31. The judge asked the prosecutor, who assured the court that the prior conviction was for fourth degree assault with sexual motivation and that he would not be offering the conviction unless the defendant somehow opened the topic up. The court responded, "that's granted." *Id.*

The defense motion had been rather detailed, with several subparts addressing the protection order hearing question. CP at 37. Since the trial court did not address any of the aspects of that request, nor of the request that there be no mention concerning any pending investigations of Mr. McAllister, it is difficult to say that the court granted any

21

relief, let alone the nuanced requests made by the defense. Accordingly, we cannot say that the testimony violated any order in limine.

Even if the court had intended to preclude mention of a protection order hearing, there was no harm from the statement. In context, Mr. Perkins was simply detailing the occasions when he had seen Mr. McAllister walking without apparent difficulty during the relevant time periods. The reference to a "protection order hearing" did not state who had sought any protection order or that the court had granted any party some relief. There simply was no significant prejudice from the statement. Accordingly, the trial court did not err.

The final "evidentiary" topic is one addressed previously concerning Mr. Sabiniano.[13] The court excluded on relevance grounds proposed testimony that relatives of S.L. had told Sabiniano not to testify, ostensibly at the direction of S.L., although there was no effort to tie the alleged threat to S.L. until the motion for a new trial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Whether or not Sabiniano was unsuccessfully threatened before he testified at trial appears to have no

---

[13] McAllister also argues (p. 43) that he was denied his right to "confront" S.L. when the court denied his proffered exhibit of a web page explaining how to seek a U visa during Ms. Li's testimony. We do not understand how offering an exhibit during the defense case "confronts" a witness who testified previously and was already asked about the visa process. The evidence was cumulative to the testimony of Ms. Li and understandably excluded by the court. ER 403. It does not present a confrontation claim.

relevance to the determination of whether or not Mr. McAllister raped his fiancée. The trial court had a tenable basis for excluding this evidence.

In some circumstances the constitution requires that state evidentiary rules give way to the constitutional right to present a defense. *E.g.*, *State v. Jones*, 168 Wn.2d 713, 719-21, 230 P.3d 576 (2010). There is, however, no constitutional right to present irrelevant evidence. *Id.* at 720. If a court excludes relevant evidence to the point where it effectively prevents presentation of the defense, the constitutional right is violated. *Id.* at 721. Mr. McAllister argues that this is one of those occasions because he was denied the opportunity to attack S.L.'s credibility. Br. of Appellant at 43-44.

Washington long has excluded evidence that attempts to impeach a witness on collateral matters. "It is a well recognized and firmly established rule in this jurisdiction, and elsewhere, that a witness cannot be impeached upon matters collateral to the principal issues being tried." *State v. Oswalt*, 62 Wn.2d 118, 120-21, 381 P.2d 617 (1963) (citing *State v. Myers*, 47 Wn.2d 840, 290 P.2d 253 (1955); *State v. Fairfax*, 42 Wn.2d 777, 258 P.2d 1212 (1953); *State v. Gilmore*, 42 Wn.2d 624, 257 P.2d 215 (1953); *State v. Putzell*, 40 Wn.2d 174, 242 P.2d 180 (1952); *State v. Kritzer*, 21 Wn.2d 710, 152 P.2d 967 (1944); *O'Neil v. Crampton*, 18 Wn.2d 579, 140 P.2d 308 (1943); *Warren v. Hynes*, 4 Wn.2d 128, 102 P.2d 691 (1940); *State v. Johnson*, 192 Wash. 467, 73 P.2d 1342 (1937); *State v. Sandros*, 186 Wash. 438, 58 P.2d 362 (1936); *State v. Nolon*, 129 Wash. 284, 224 P. 932 (1924); *State v. Carroll*,

119 Wash. 623, 206 P. 563 (1922); *State v. Schuman*, 89 Wash. 9, 153 P. 1084 (1915); *State v. Stone*, 66 Wash. 625, 120 P. 76 (1912); *State v. Carpenter*, 32 Wash. 254, 73 P. 357 (1903)).

The defense did not ask S.L. about the alleged incident, so there was no basis for attempting to impeach her by contradiction, something that the collateral matters impeachment doctrine clearly would forbid. Instead, Mr. McAllister attempts to paint this as simply further evidence that she was not credible, although he does not explain how that is the case. On these facts, we doubt that he has adequately tied the alleged threat to S.L. The fact that family members may have found him through her and threatened him, if it occurred, does not mean that she requested or directed that action. Regardless, any value this incident had for attacking S.L.'s credibility was quite minimal and did not amount to a denial of the opportunity to present a defense. Mr. McAllister introduced far more effective evidence of S.L.'s motivation, particularly her "boyfriend" in the Philippines and her letter to him, than this incident provided. This incident added little to the defense theory of the case and its exclusion simply did not impact the outcome.

The challenged rulings did not deprive the defendant of a fair trial.

*Count 18*

Mr. McAllister next argues that the evidence was insufficient to support the conviction on count 18, a charge of rape in the second degree. We agree and reverse that conviction.

Evidence is sufficient to support a conviction if there is some evidence from which a jury could find each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221.

As charged here, in order to convict the defendant of rape in the second degree, the State was required to prove that on April 3, 2010, Mr. McAllister engaged in sexual intercourse with S.L. by forcible compulsion. RCW 9A.44.050(1)(a); CP at 6. Sexual intercourse requires that the sex organs of one person penetrate the mouth or sex organs of another. RCW 9A.44.010(1)(a), (c).

There was no evidence of penetration on count 18. S.L. testified that Mr. McAllister's "penis [was] strong" and that he "attacked" her. RP at 325. She did not testify that the "attack" involved his penis penetrating any of the specified portions of her body. The evidence did not permit the jury to find the element of penetration and, thus, was insufficient to support the verdict.

Count 18 is reversed and the trial court is directed to strike it from the judgment and sentence. There is no need for re-sentencing as the count did not change the scoring for the other 22 felony counts.

*Domestic Violence Aggravating Factor*

Finally, Mr. McAllister argues that the court erred in allowing the jury to consider the domestic violence aggravating factor on the counts of third degree rape. This challenge is moot and we need not address it.

It appears that the jury was instructed to answer whether two aggravating factors were present—that the rapes were committed with deliberate cruelty and constituted domestic violence. RCW 9.94A.535(3)(a), (h). We use the word "appears" because the jury instructions and verdict forms are not part of our record. The instructions as read to the jury were transcribed, but the verdict forms were not. RP at 640. Based on the briefing of the parties and the reading of the verdict forms, it appears, however, that the jury was asked to discern the presence of these two aggravating factors.

Mr. McAllister argues that the domestic violence aggravating factor is inapplicable to the third degree rape counts because that offense is not listed as a domestic violence crime in RCW 10.99.020, which provides a non-exclusive list of domestic violence crimes. *See* RCW 10.99.020(5). Because first and second degree rape are expressly included in the list of domestic violence offenses, Mr. McAllister argues that third degree rape must be excluded despite the fact that the list eschews exclusivity.

26

Generally, this court must dismiss an issue on appeal if the question presented is moot. *State v. Enlow*, 143 Wn. App. 463, 470, 178 P.3d 366 (2008). An appeal is moot when an appellate court can provide no effective relief. *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986); *In re Matter of Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983); *In re Det. of C.M.*, 148 Wn. App. 111, 115, 197 P.3d 1233, *review denied*, 166 Wn.2d 1012 (2009). That is the situation we are in here.

Even if we were to agree[14] with Mr. McAllister and strike the domestic violence finding from the 10 counts of third degree rape, we could not provide him any relief because the jury also found that the factor was present on the 12 remaining counts of second degree rape, an offense expressly included in the list of domestic violence crimes. The jury also found that all of the felony counts involved deliberate cruelty. Thus, in the event that Mr. McAllister had to be sentenced again, the judge has more than ample justification for imposing an exceptional sentence. Striking one aggravating factor from some of the counts would not aid Mr. McAllister in the least.

The challenge to the aggravating factors is moot.

Affirmed in part and reversed in part.

---

[14] We note that Division Two has already rejected a similar argument in *State v. Lindahl*, 114 Wn. App. 1, 56 P.3d 589 (2002) (murder could constitute domestic violence).

No. 32290-4-III
*State v. McAllister*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.