
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| ELAINE and CALVIN VINICK, husband and wife, and their marital community,<br><br>      Appellants,<br><br>      v.<br><br>STATE OF WASHINGTON, dba HARBORVIEW MEDICAL CENTER; and MARK ELIOT WHIPPLE, MD, and JANE DOE WHIPPLE, husband and wife, and their marital community,<br><br>      Respondents. | No. 70353-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED<br><br>FILED: <u>October 6, 2014</u> |

Cox, J. — Elaine Vinick and Calvin Vinick, husband and wife, appeal a judgment on an adverse jury verdict on Elaine Vinick's medical malpractice claim against Dr. Mark Whipple, Harborview Medical Center, and others. The trial court did not abuse its discretion in denying Vinick's pretrial motions in limine. The evidentiary rulings on appeal do not warrant relief. The trial court properly exercised its discretion in declining to give certain jury instructions that are the subjects of this appeal. And the trial court properly dismissed the informed consent claim because it was duplicative of the negligence claim. We affirm.

In June 2008, Elaine Vinick, who resides in Connecticut, was in Seattle with her husband and adult children to embark on a cruise to Alaska. Prior to boarding the ship, Vinick tripped and fell on a rise in the sidewalk near the Paramount Hotel. She was unable to put her hands in front of her while she fell, and she sustained serious injuries to her chin and jaw.

Vinick was taken by ambulance to Harborview Medical Center. A CAT scan revealed multiple fractures to her jaw. Doctors told Vinick that she would need surgery. Dr. Mark Whipple, the head of the otolaryngology head and neck surgery department, devised her treatment plan along with resident physicians. Dr. Whipple testified at trial that he met with Vinick prior to the surgery and discussed her injuries and the surgical plan. Vinick testified that she did not remember meeting Dr. Whipple. But she did remember meeting with a woman doctor who discussed the planned surgery with her.

Vinick also remembers signing a special consent for procedural treatment form. She testified that she did not understand any of the technical terms in that form, but the form states she "had a chance to ask questions and to have [her] questions answered."[1]

Two days after her fall, Dr. Whipple performed surgery on Vinick. Harborview discharged Vinick two days later, and she returned to her home state of Connecticut.

---

[1] Ex. 1 at 101-02.

Vinick went to see doctors in Connecticut for follow-up treatment. She testified that she complied with some, but not all, of the recommended treatment.

Vinick and her husband commenced a tort action against the City of Seattle and the Paramount Hotel. That suit resulted in a settlement.

Subsequently, they commenced this action against Harborview, Dr. Whipple, and others. They asserted claims for professional negligence and malpractice, including lack of informed consent; negligent failure to appropriately evaluate, intervene, and timely treat; and loss of a chance of a better outcome.

Vinick alleged that the surgery performed at Harborview left her with an "open bite." In other words, her top front teeth and her bottom front teeth do not touch. She alleged damages including loss of a chance of a better outcome, severe and permanent injury, pain and suffering, emotional distress, treatment expenses, lost income, loss of services and loss of the enjoyment of life.

Defendants answered, asserted affirmative defenses, including apportionment of fault to other entities, and asserted the right to a setoff in the full amount of the settlement from the prior lawsuit.

Before trial, the trial court denied, in part, Vinick's motion in limine to exclude evidence of Vinick's prior falls. It also denied her motion to exclude suggestion of fault by non-parties.

The case proceeded to a jury trial in April 2013.

After Vinick presented her case, the court granted the defense's motion to dismiss Harborview from the action. That dismissal is not at issue in this appeal.

Defense counsel also moved to dismiss the informed consent claim against Dr. Whipple. The court granted this motion.

At the close of trial, Dr. Whipple withdrew his affirmative defense of third party fault. There was no request for a limiting instruction regarding the use of evidence that had been admitted based on this defense. And there was no motion for mistrial.

The jury found that Dr. Whipple was not negligent. It did not reach the issues of proximate cause or damages. The trial court entered judgment on the jury's verdict.

This appeal follows.

## MOTIONS IN LIMINE

Vinick argues that the trial court abused its discretion when it denied two of her motions in limine. We disagree.

This court reviews a trial court's rulings on motions in limine for abuse of discretion.[2] Judicial discretion is abused if exercised on untenable grounds or for untenable reasons.[3] If the trial court abuses its discretion, the error is not reversible unless the appellant demonstrates prejudice.[4]

---

[2] Gammon v. Clark Equip. Co., 38 Wn. App. 274, 286, 686 P.2d 1102 (1984), aff'd, 104 Wn.2d 613, 707 P.2d 685 (1985).

[3] Portch v. Sommerville, 113 Wn. App. 807, 810, 55 P.3d 661 (2002).

[4] Id.

*Fault by Non-Parties and Other Compensation*

Vinick first asserts that the court abused its discretion when it denied her motion in limine to exclude evidence of fault of non-parties. We disagree.

Here, Dr. Whipple initially raised the affirmative defense that non-parties were at fault in response to the complaint. He did not abandon that defense until testimony and other evidence relevant to that defense had been admitted during the course of the trial. Thus, at the time of the pretrial motion in limine, such evidence was relevant.

We also note that this pretrial motion was made without the benefit of evidentiary context. Thus, the question is whether the trial court abused its discretion in denying the motion without having before it the evidentiary context required. We conclude there was no such abuse of discretion.

We note that the court carefully exercised its discretion concerning evidence of prior claims and compensation when presented during trial. The trial court did not permit testimony alleging that the City was at fault. It did not admit into evidence the Vinicks' complaint against the City. Further, although it allowed defense counsel to ask the Vinicks about prior claims, the jury did not hear any evidence that the Vinicks had settled these claims or had received compensation. Rather, the jury heard only that the Vinicks had pursued claims against the City and the hotel and that these claims had been resolved.

Vinick argues that "[d]efense questions implying payments from prior sources violates Diaz v. State."[5] Reliance on Diaz is misplaced.

In Diaz, a medical malpractice case, the supreme court held that the trial court erred when it ruled that evidence that Louis Diaz had settled with two defendant health care providers was admissible.[6] But while Diaz's attorney discussed the prior settlement in his opening statement, the defendants never used or offered settlement evidence at trial.[7] Accordingly, the supreme court concluded that because the settlement evidence was a "minor feature" at trial, and because the trial court gave a curative instruction, the error was harmless.[8]

Here, there was no request for a limiting instruction as to such evidence once Dr. Whipple abandoned the affirmative defense that made the evidence relevant. And there was no motion for a mistrial based on such evidence no longer being relevant once the defense was abandoned.

Vinick argues that, unlike Diaz, the admission of the evidence in this case was not harmless. She argues, "In Diaz evidence of prior claims came up only twice and no evidence of those claims was presented to the jury."[9] And she points out that the court in Diaz issued a curative instruction. She compares Diaz

---

[5] Opening Brief of Appellants at 39 (citing Diaz v. State, 175 Wn.2d 457, 285 P.3d 873 (2012)).

[6] Diaz, 175 Wn.2d at 470.

[7] Id. at 461.

[8] Id. at 460.

[9] Reply Brief of Appellants at 13-14 (emphasis omitted).

to this case, where defense counsel questioned both Vinicks about their prior claims, and she argues that the nature of this questioning "had to have a huge impact on the jury."[10]

But in Diaz, it was **settlement** evidence that came up, not "evidence of prior claims." Specifically, the jury heard evidence that "the University of Washington and Dr. Neal Futran were once parties to this litigation and later entered into a settlement with the plaintiffs, paying the plaintiffs $400,000."[11] Vinick equates settlement evidence and evidence of prior claims without explanation. And she fails to point to any portion of this record to show the admission of any evidence indicating that she settled or received compensation for these prior claims. In short, Vinick fails to explain how the evidence in this case is inadmissible "settlement evidence" or how it violates Diaz in any material way.

Vinick also contends that the court should not have allowed the defense to present "evidence of the fault of non-parties they refused to disclose in discovery." She cites CR 12(i), which provides that defendants must plead nonparty at fault as an affirmative defense. As we already stated, the defense pled fault of a non-party as an affirmative defense.

---

[10] Id. at 14-15.

[11] Diaz, 175 Wn.2d at 461-62.

Thus, Vinick appears to assert some sort of discovery violation, which otherwise remains unexplained. We do not further discuss this argument, unsupported by any other authority.

In sum, the court did not abuse its discretion when it permitted defense counsel to ask the Vinicks about their prior claims against the City and hotel.

### Evidence of Unrelated Falls

Vinick next argues that the trial court abused its discretion when it denied her motion in limine to exclude evidence of unrelated falls. She asserts that such evidence was not relevant. She is mistaken.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[12] Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[13] The trial court has broad discretion in balancing relevance against prejudice.[14] Evidence that a plaintiff previously suffered similar injuries may be relevant.[15]

Here, Vinick moved to exclude evidence of other unrelated falls. The trial court granted the motion in part and denied it in part. It stated:

---

[12] ER 401.

[13] State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984).

[14] State v. Baldwin, 109 Wn. App. 516, 528, 37 P.3d 1220 (2001).

[15] Torno v. Hayek, 133 Wn. App. 244, 251, 135 P.3d 536 (2006).

8

[W]hat I understand is there's a question as to how she fell, or what the causation of the fall was. I am not going to allow—I don't know how long these prior falls occurred prior to the precipitating fall.

But I think the fact that she may have had other falls is relevant, as long as it's within a reasonable time period of the actual accident.

So what I'm going to do is I'm going to grant it in part and deny it in part. I need to know more about the medical history of the falls. I'm not here to make any determination whether this was due to cardiac issues, syncope . . . or some other medical issue. I'm certainly not going to permit [defense counsel] to argue on speculative theories.

. . .

But if it does go to his theory of the defense, I cannot prohibit him, if it's related. I mean, if she had a fall ten years prior and nothing in between, I would agree with you, that's irrelevant, and probably unrelated.

But if there's something within the last couple of years prior to this fall, because she is older, it may be relevant, and it may go to the theory of the defense.[16]

The trial court's decision shows that it carefully exercised its discretion. It expressly stated that it would not permit defense to argue "speculative theories," and it ruled that this evidence must be within a "reasonable time period of the actual accident." But as the court pointed out, some of this evidence was potentially relevant to the theory of defense and would be properly admitted.

At trial, defense counsel asked Vinick about several falls in the past few years. Some of these falls revealed prior injuries to Vinick's head or face. For example, Vinick testified that in one fall she hit her teeth. Additionally, a 2007 doctor's form stated that Vinick had fallen three times and hit her chin. This evidence revealed prior facial injuries and was relevant to the issues of causation

---

[16] Report of Proceedings (Mar. 28, 2013) at 12-13.

and damages. In short, the trial court did not abuse its discretion when it denied the motion in limine and later admitted this evidence at trial.

Vinick argues generally that references to all of these falls "only serves to infer some sort of fault, clumsiness, or character trait" and had no other purpose or relevance. But this evidence was relevant to the issues of causation and damages. Moreover, Vinick fails to show prejudice. She cites no authority to support her argument that this evidence was prejudicial, especially in light of the fact that the jury did not reach these issues.

## JURY INSTRUCTIONS

Vinick makes two arguments related to the jury instructions. She first argues that the trial court abused its discretion when it declined to give her proposed specialist instruction. She then argues it was an abuse of discretion to decline to give a loss of chance of a better outcome instruction. We reject both arguments.

An appellate court reviews a trial court's choice of jury instructions for an abuse of discretion.[17] A trial court abuses its discretion if it exercises its discretion based on untenable grounds or reasons.[18] "It is error for a trial court to give an instruction which is not supported by the evidence."[19]

---

[17] State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).

[18] State v. Smith, 124 Wn. App. 417, 428, 102 P.3d 158 (2004).

[19] State v. Ager, 128 Wn.2d 85, 93, 904 P.2d 715 (1995).

*Specialist Instruction*

Vinick first asserts that the trial court abused its discretion when it declined to give her proposed specialist instruction. We disagree.

Vinick argued that Dr. Whipple held himself out as a specialist in maxillofacial surgery and should be held to the standard of care for a maxillofacial surgeon. Thus, she proposed the following instruction:

> A health care professional owes to the patient a duty to comply with the standard of care for one of the profession or class to which he or she belongs.
>
> An ontolaryngologist head and neck surgeon *who holds himself or herself out as a specialist in maxillofacial surgery* assumes the care or treatment of a condition that is ordinarily treated by a maxillofacial surgeon has a duty to exercise the degree of skill, care, and learning expected *of a reasonably prudent maxillofacial surgeon* . . . .[20]

In contrast, Dr. Whipple argued that there was no evidence that he held himself out "as anything other than what he was, which is board certified in the specialty in otolaryngology head and neck surgery . . . ."[21] Thus, he proposed the following instruction:

> A health care professional owes to the patient a duty to comply with the standard of care for one of the profession or class to which he or she belongs.
>
> An ontolaryngology head and neck surgeon has a duty to exercise the degree of skill, care, and learning expected *of a reasonably prudent otolaryngology head and neck surgeon* . . . [22]

---

[20] Clerk's Papers at 591 (emphasis added).

[21] Report of Proceedings (Apr. 8, 2013) at 187.

[22] Clerk's Papers at 470 (emphasis added).

11

The trial court expressly disagreed with Vinick's proposed instruction. It stated that Dr. Whipple "never held himself out to be anything other than an otolaryngology head and neck surgeon" and that he "never held himself out as an oral maxillofacial surgeon."[23] Accordingly, the court stated that Vinick's proposed instruction was a "misstatement of the facts and would be a missinstruction on the law."[24]

The trial court properly decided to give Dr. Whipple's proposed instruction. At trial, Dr. Whipple testified, "I practice *in the specialty of otolaryngology head and neck surgery*."[25] Despite Vinick's arguments to the contrary, Dr. Whipple did not testify that he was a specialist in maxillofacial trauma surgery. In short, there was no evidence that supported giving her proposed instruction.

Vinick points to portions of Dr. Whipple's testimony where he testified that he did a lot of mandible surgeries throughout his career and that a big part of his practice is craniomaxillofacial trauma surgery. But nothing about this testimony supports the assertion that Dr. Whipple claimed to be a specialist in maxillofacial surgery. Rather, it merely shows that he had experience in that area. Thus, Vinick's citations to the record do not support her claim that Dr. Whipple "repeatedly held himself out to be a specialist in maxillofacial trauma surgery."[26]

---

[23] Report of Proceedings (Apr. 8, 2013) at 189, 190.

[24] Id. at 188.

[25] Id. at 145 (emphasis added).

[26] Brief of Appellants at 40.

Vinick also points to her own testimony, where she stated that she understood that Harborview had the best oral surgeons in the country. She argues that "she had the right to expect that Dr. Whipple must be an oral surgeon." But this testimony does not support her assertion that Dr. Whipple held himself out to be a specialist, even if we were to accept her assertion that she thought he was. Vinick's arguments are not persuasive.

*"Loss of Chance" Instruction*

Vinick next contends that the trial court abused its discretion when it declined to give her proposed loss of chance of a better outcome instruction. We disagree.

In Herskovits v. Group Health Cooperative of Puget Sound, a plurality of the supreme court recognized a medical patient's lost chance of survival as an actionable injury.[27] In 2011, the supreme court formally adopted the Herskovits reasoning and extended it to apply to "lost chance claims where the ultimate harm is some serious injury short of death."[28] "Under this formulation, a plaintiff bears the burden to prove duty, breach, and that such breach of duty proximately caused a loss of chance of a better outcome."[29]

Here, the trial court did not abuse its discretion when it declined to give Vinick's proposed Instruction 8 and when it declined to follow Vinick's

[27] 99 Wn.2d 609, 664 P.2d 474 (1983).

[28] Mohr v. Grantham, 172 Wn.2d 844, 857, 262 P.3d 490 (2011).

[29] Id.

subsequent suggestion to add a provision regarding loss of chance to a different jury instruction.

First, we conclude that the invited error doctrine prevents Vinick from making this first argument on appeal. The invited error doctrine "prohibits a party from 'setting up error in the trial court and then complaining of it on appeal.'"[30]

Vinick's proposed "loss of chance" instruction, Instruction 8, stated that Vinick had the burden of proving, among other things, that "by failing to perform an open reduction and internal fixation of one of Vinick's bilateral subcondylar fractures Plaintiff Elaine Vinick lost a chance of [a] better outcome in her surgery."[31] But at trial, Vinick withdrew this instruction. Thus, the invited error doctrine prevents her from arguing on appeal that the trial court erred when it failed to give this instruction. This alone warrants rejection of this argument.

Further, the trial court did not abuse its discretion when it declined to follow Vinick's subsequent suggestion to add a provision regarding loss of chance to a different jury instruction.

Upon withdrawing proposed Instruction 8, Vinick's counsel suggested adding an extra element to Instruction 6, the instruction setting out the burden of proof in a negligence action. She orally proposed adding an element "that

---

[30] State v. Armstrong, 69 Wn. App. 430, 434, 848 P.2d 1322 (1993) (quoting State v. Young, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991)).

[31] Clerk's Papers at 595.

defendant's negligence denied [her] a reasonable chance of [a] better outcome in her surgery."[32]

The defense argued that there was no foundation for this instruction because there was a lack of scientific testimony concerning the percentage chance with one form of treatment, and the percentage chance for the other form of treatment.

The trial court denied Vinick's request in favor of giving the standard proposed WPI 105.03.

The court explained that giving Vinick's proposed instruction would result in the court commenting on the evidence:

> I'm just going to give the rate. The standard proposed 105.03 without highlighting. I think it's a subset, if [Vinick's] argument that this was a proximate cause that [Dr. Whipple] didn't plate the left condyle. But I think to then say and connect it that this was the better surgery outcome, that's like saying [Vinick's expert's] opinion is a better outcome, [Vinick's expert's] opinion was a better outcome than what happened here. And what Dr. Whipple testified to, and what Dr. Kalman testified to, and I think I'm making a comment on the evidence by doing that. I think [Vinick] [is] is not precluded from arguing that she had—this was the better surgery outcome . . . .[33]

It later emphasized this point:

> So I just don't think it belongs in the proximate cause definition or instruction to the jury because I think I make a comment [on the evidence] that this was the better surgery, and I can't make that comment that this was the better surgery. And in a proximate cause context. So I'm just explaining why I don't think it belongs in. But I do believe it is a subset of [Vinick's] argument to the jury.[34]

---

[32] Report of Proceedings (Apr. 9, 2013) at 81.

[33] Id. at 83-84.

[34] Id. at 86.

15

The trial court's concern was valid. If the court included Vinick's proposed language in the jury instruction, it risked commenting on the evidence in a material way. Further, as the court also explained, the testimony in this particular case did not support giving the instruction. In sum, the trial court's decision to give the WPI was a proper exercise of discretion. Vinick's arguments to the contrary are not persuasive.

## INFORMED CONSENT

Vinick argues that the trial court erred when it dismissed her claim for failure to obtain an informed consent. She does not dispute that doctors informed her of some risks of the proposed treatment that Dr. Whipple performed: an open reduction on Vinick's left condylar fracture and maxillomandibular fixation. Rather, she asserts they failed to inform her about "the risks and benefits of ORIF [open reduction and internal fixation] of one of her condyle [jaw] fractures," a procedure that Dr. Whipple did not perform.[35] We hold that the informed consent claim was properly dismissed because it is duplicative of the negligence claim that went to the jury.

As the supreme court recently reiterated, "Informed consent and medical negligence are distinct claims that apply in different situations. While there is some overlap, they are two different theories of recovery with independent rationales."[36]

---

[35] Opening Brief of Appellants at 33.

[36] Gomez v. Sauerwein, 180 Wn.2d 610, 617, 331 P.3d 19 (2014).

Gustav v. Seattle Urological Associates is instructive.[37] There, Robert J. Gustav, a man suffering from incurable metastasized prostate cancer, sued his physicians both for negligent failure to diagnose his cancer and for failure to obtain informed consent.[38] The doctors moved for summary judgment on the ground that Gustav's informed consent claim was subsumed in his negligent failure to diagnose claim.[39]

Gustav's negligence claim was that the doctors were negligent in "failing to order diagnostic tests as frequently as appropriate and failing to order completion of the 1991 biopsy for the four areas of the prostate gland not tested by giving the appropriate anesthesia to the plaintiff."[40] Gustav's informed consent similarly alleged that the doctors "failed to fully inform [him] of the appropriate frequency of diagnostic testing, the dangers involved in not testing more frequently, and the consequences of not completing the 1991 biopsy."[41]

The trial court granted summary judgment dismissal of the informed consent claim.[42] On appeal, this court affirmed, holding that "Gustav's allegations involved negligence prior to treatment, not informed consent

---

[37] 90 Wn. App. 785, 954 P.2d 319 (1998).

[38] Id. at 786-88.

[39] Id. at 788.

[40] Id. at 789 (internal quotation marks omitted).

[41] Id. at 789-90 (alteration in original) (internal quotation marks omitted).

[42] Id. at 788.

concerning a treatment the doctor proposed to use. These are two distinct causes of action. Allegations supporting one normally will not support the other. Both Gustav's negligence claims and his informed consent claim were based on [the doctor's] failure to diagnose his prostate cancer."[43]

Here, similar to Gustav, Vinick's allegations do not support both a negligence claim and an informed consent claim. The essence of Vinick's negligence claim is that Dr. Whipple failed to meet the relevant standard of care by failing to recognize and perform an alleged preferred alternative procedure: ORIF. But her informed consent claim is based on the same facts. The essence of that claim is that Dr. Whipple failed to recognize and discuss with her the risks and benefits of this alleged preferred alternative. These arise from the same facts, are not properly based on separate rationales, and cannot both be sustained. She fails to argue persuasively why Gustav does not control.

We recognize that this case does not involve a failure to diagnose, as in Gustav. But that factual distinction is not material to the rationale of that case, applied here. In both cases, the informed consent claim was subsumed in the negligence claim. It was proper to dismiss Vinick's informed consent claim.

Vinick points to the expert testimony from Dr. Darlene Chan to support her informed consent claim. Specifically, Dr. Chan testified that an open bite is an "expected outcome" of a bilateral subcondylar fracture because these fractures need wires or plates to hold them in place or they will get out of position. And Dr.

---

[43] Id. at 789.

Chan testified that, in her opinion, Dr. Whipple should have performed an ORIF for one of Vinick's condyle fractures, preferably the left. Vinick relies on this testimony to assert:

> Vinick was not informed of the risks and benefits of an open reduction and internal fixation [ORIF] of one of her condylar fractures. Dr. Chan's testimony makes it clear that information was a material fact, that the failure to perform this procedure would leave Mrs. Vinick with an open bite and that Mrs. Vinick did end up with an open bite because Dr. Whipple failed to perform that procedure. Any reasonable patient would not consent to the surgery if she had been advised of these facts.[44]

But this further supports the conclusion that the informed consent claim is subsumed in Vinick's negligence claim. Essentially, Vinick alleges that Dr. Whipple did not tell her that his proposed treatment would result in injury, and he failed to obtain her consent to perform a procedure that allegedly fell below the standard of care. This is a negligence theory, not an informed consent theory, and Vinick's argument to the contrary is not persuasive.

We affirm the judgment.

Cox, J.

WE CONCUR:

Trickey, J

Jan, J.

---

44 Brief of Appellant at 30-31.