IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| CHRIS SEARS,<br><br>                    Appellant,<br><br>        v.<br><br>THE BOEING COMPANY, and<br>THE DEPARTMENT OF LABOR<br>AND INDUSTRIES<br><br>                    Respondent. | No. 80369-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

LEACH, J. — Chris Sears was injured while working as a welder for the Boeing Company in 2016. He filed a claim for time loss and medical benefits with the Department of Labor and Industries (Department). The Department denied Sears benefits and closed his claim. Sears appealed to the Board of Industrial Insurance Appeals (BIIA), which affirmed the Department's decision. Sears then appealed to King County Superior Court, which affirmed the BIIA. Here, Sears appeals the superior court's determination. We affirm.

BACKGROUND

Injury and Treatment

On November 4, 2016, Chris Sears injured his neck and shoulder while working as a welder for the Boeing Company, a self-insured employer. Sears was working in a welding chamber when he experienced pain in his left shoulder and

Citations and pin cites are based on the Westlaw online version of the cited material.

arm and heard a loud pop in his left shoulder. While welding, Sears wore a 16 to 19 ounce helmet. To cover his face with the helmet's shield, Sears repeatedly opened and closed it by flipping his head forward.

On November 8, 2017, Sears returned to work. His neck and left arm pain increased when he wore his welding helmet. The next morning, Sears woke up with severe left shoulder pain, arm pain, and tingling. He sought medical care. Sears received physical therapy, a left shoulder injection, and chiropractic treatment. His condition temporarily improved.

Nurse Practitioner Laurie Gwerder was Sears's attending health care provider in November 2016. During this time, she wrote a note restricting Sears from certain work activities that would add stress to his arms, shoulder, and neck. In January 2017, she diagnosed Sears with "cervical radiation or radiculopathy and restricted the weight of his welding helmet, as it may be precipitating pain in his neck and radiating into his left arm."

After Sears's injuries, he wore a light weight welding shield instead of a helmet. To cover his face with the light weight shield, Sears could either flip his head forward or use his hand.

In November and December 2016, Sears used his sick leave and vacation leave to miss one to two days of work per week. Sears did not work from January 31 to May 17, 2017.

Prior History of Symptoms

Before this industrial injury, Sears experienced neck and back pain caused by accidents in February 1999 and November 2005. In 2006, Sears had C5-6 discectomy and fusion surgery. After recovering from the surgery, he had some stiffness but no upper extremity numbness or activity limitations. Dr. David Montgomery, Sears's chiropractor, treated Sears on April 14, 2008 for chronic neck and back pain, but his symptoms did not radiate at that time.

In June 2011, Sears experienced pain radiating down his arms and constant neck pain. In January 2013 and November 2014, Sears was treated for neck and back pain. In February 2015 and 2016, he was treated for pain that radiated down his left arm. This pain worsened on October 28, 2016.

Procedural History

On November 8, 2016, Sears filed an application for time loss benefits with the Department. The Department allowed his claim for medical treatment and ordered Boeing to provide appropriate benefits under the Industrial Insurance Act (IIA).

Sears asked for temporary total disability benefits from January 30, 2017 through April 3, 2017. And, Sears asked the Department to penalize Boeing for an unreasonable delay in benefit payments for the same period.

The Department issued four orders. First, on May 19, the Department determined Boeing had reasonable medical doubt because Sears's physician did not decide whether his neck problem was causally related to the industrial injury

and denied Sears's request. Second, on May 19, the Department denied Sears's request for time loss benefits. Third, on May 30, the Department determined Boeing was not responsible for Sears's cervical radiculopathy. And, fourth, on July 11, the Department closed Sears's claim and determined he was not entitled to an award for time loss or permanent partial disability benefits. Sears appealed all four of the Department's orders to the Board of Industrial Insurance Appeals (BIIA).

Boeing wished to present the deposition testimony of Dr. Donald Lambe. On January 25, 2017, Dr. Lambe, an Orthopedic Surgeon, evaluated Sears and determined the November industrial injury caused a left should strain, but the injury was resolved. Dr. Lambe determined that if Sears had cervical radiculopathy, it was likely a preexisting condition unrelated to his industrial injury, and his industrial injury did not impact his neck.

Sears first objected to Dr. Lambe's telephonic deposition testimony. On January 24, 2018, Sears withdrew his objection via email. On February 8, Boeing notified the Industrial Appeals Judge (IAJ) and Sears that it would conduct the telephonic deposition of Dr. Lambe on March 27, 2018. On March 21, Boeing informed the IAJ that Dr. Lambe suffered an injury requiring emergency surgery on March 26. On April 23, Boeing notified the IAJ and Sears that it rescheduled Dr. Lambe's telephonic deposition for May 15. On April 26, 2018, Sears again objected to the telephonic testimony.

On May 14, 2018, the night before the deposition, Sears served an after-hours motion to strike Dr. Lambe's telephonic deposition testimony. At the May 15 deposition, Sears again objected to the telephonic deposition arguing the parties did not agree to it as required by WAC 263-12-115. The telephonic deposition proceeded and Sears had the opportunity to cross-examine Dr. Lambe.

On May 31, 2018, the IAJ held a telephonic conference to address Sears's motion to strike. The IAJ asked Sears to explain how the telephonic deposition prejudiced him. Sears argued the telephonic deposition prejudiced him because he was not provided an index of the exhibits Dr. Lambe reviewed, he had a difficult time coordinating documents and exhibits with the witness, the call dropped, and Dr. Lambe's accent with the static phone connection made it difficult to understand and provide him an opportunity to actively object. Sears also argued the January 24th withdrawal of his objection to Dr. Lambe's testimony was a one-time waiver conditioned on the deposition occurring by a certain date. The IAJ determined Sears did not condition his withdrawal on the deposition occurring by a certain date. The IAJ also found Sears's May 14 motion to strike untimely. The IAJ denied Sears's request to strike Dr. Lambe's testimony but granted Sears a second opportunity to cross-examine Dr. Lambe. The IAJ stated a preference for Dr. Lambe's testimony to be in person but "would agree to do a telephone hearing with both parties present."

On June 14 and June 25, Sears again objected to Dr. Lambe's telephonic testimony. The IAJ determined "there were solutions offered during the deposition

to Mr. Carson to allow him and his client, maybe, a better opportunity to hear." The IAJ also determined there was no "intentional wrongdoing" in rescheduling the telephonic deposition testimony. The IAJ permitted Dr. Lambe's telephonic testimony and allowed Sears to cross-examine Dr. Lambe a second time.

The IAJ reviewed the testimony and determined the "Department order finding that the injury didn't proximately cause cervical radiculopathy was correct." On October 4, 2018, the IAJ issued a proposed order affirming all four Department decisions. It determined "The difference between treatment before and after the injury was that Mr[.] Sears' radiating symptoms resolved with treatment before the injury[.] They didn't resolve after the injury." Because it determined his neck injury was an unrelated preexisting condition and Boeing provided evidence that it had alternative tasks for him that met his physical restrictions, the IAJ determined Sears was not entitled to compensation or a penalty. The IAJ affirmed three Department orders and dismissed the fourth for claim closure.

Sears sought review of the proposed order. On December 5, 2018, the BIIA denied Sears's request and the proposed order became final.

Sears appealed to King County Superior Court. He asked the superior court to strike Dr. Lambe's testimony because it occurred by phone. The court asked Sears to explain how Dr. Lambe's telephonic testimony prejudiced him. Sears argued he was prejudiced by the delay in litigating the issue with Dr. Lambe's poor recollection of Sears, Dr. Lambe's thick accent, the dropped call, static phone connection, and lack of a medical index. He argued these issues made it difficult

6

for him to cross-examine Dr. Lambe. He also argued he was prejudiced because he did not agree to the telephonic deposition. The court determined Dr. Lambe's telephonic testimony did not prejudice Sears and denied Sears's request to strike the testimony.

The jury determined the BIIA's decision was correct and answered the four questions on the special verdict form affirmatively. Based on the jury verdict, the superior court affirmed the BIIA's decision.

Sears appeals.

ANALYSIS

I. Standard of Review

Washington's IIA provides for superior court review of BIIA determinations, and it includes the right to a jury trial.[1] The superior court reviews the BIIA decisions de novo.[2] The superior court considers only the evidence contained in the BIIA record.[3] The superior court considers the BIIA's findings and decisions prima facie correct. The party challenging them has the burden to prove otherwise by a preponderance of evidence.[4] "On review, the superior court may substitute its own findings and decision for the Board's only if it finds 'from a fair

---

[1] Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009).
[2] Rogers, 151 Wn. App. at 179.
[3] McDonald v. Dep't of Labor & Indus., 104 Wn. App. 617, 619, 17 P.3d 1195 (2001); RCW 51.52.115.
[4] Ruse v. Dep't. of Labor & Indus., 138 Wn. 2d 1, 5, 977 P.2d 570 (1999); RCW 51.52.115.

preponderance of credible evidence', that the Board's findings and decision are incorrect.'"[5]

Our appellate "review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings."[6]

The ordinary civil standards of review, rules of evidence, and rules of civil procedure govern appeals from superior court decisions in IIA cases.[7]

II.    Dr. Lambe's Testimony

Sears argues the superior court should not have admitted Dr. Lambe's telephonic testimony and asks this court to strike the testimony and remand for a new trial. The Department and Boeing claim the superior court properly admitted Dr. Lambe's testimony and that Sears cannot demonstrate the admission of Dr. Lambe's telephonic testimony prejudiced him.

We review evidentiary rulings for abuse of discretion.[8] A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its

---

[5] Ruse, 138 Wn. 2d at 5-6 (quoting McClelland v. ITT Rayonier, Inc., 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)).

[6] Ruse, 138 Wn. 2d at 6 (quoting Young v. Dep't. of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)).

[7] Gomez v. Dep't of Labor & Indus., 13 Wn. App. 2d 644, 650, 467 P.3d 1003 (2020); RCW 51.52.140.

[8] State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).

decision on untenable grounds or reasons.[9] We view "the evidence 'in the light most favorable' to the party who prevailed at the superior court."[10]

Waiver/ Prejudice

As an initial matter, the Department and Boeing argue Sears waived his objection to the telephonic deposition. Sears asks this court to ignore his January 24 waiver claiming he conditioned it on expediting litigation. The IAJ determined Sears's waiver was not "conditional on the deposition being taken by a certain date." Reviewing the evidence in the light most favorable to the party that prevailed in superior court, the trial court did not abuse its discretion in finding the waiver was not conditional because substantial evidence supports it.

The Department and Boeing argue that even if the superior court improperly admitted Dr. Lambe's telephonic testimony, the error was harmless and Sears did not suffer any prejudice. Boeing also argues any prejudice was cured when Sears was permitted to cross-exam Dr. Lambe for a second time. "A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case."[11] Here, the IAJ and the superior court asked Sears to explain how Dr. Lambe's testimony prejudiced him. They both determined that Sears could not show any prejudice. If the initial deposition prejudiced Sears, the

---

[9] Finch, 137 Wn.2d at 810.

[10] Stone v. Dep't of Labor & Indus., 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

[11] In re Det. of Pouncy, 168 Wn.2d 382, 391, 229 P.3d 678 (2010) (quoting State v. Britton, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)).

IAJ cured it by permitting Sears to cross-examine Dr. Lambe for a second time after reviewing the record. The trial court did not abuse its discretion by deciding that any prejudice caused by the dropped call, static phone connection, thick accent, and lack of a medical index were remedied by Sears's ability to cross-examine Dr. Lambe a second time.

a. Request to Strike Testimony on Appeal

Sears asks this court to strike Dr. Lambe's testimony and remand for retrial. He claims the parties did not agree to a telephonic deposition and the superior court did not have good cause to overcome WAC 263-12-115(10)'s requirement that the parties agree to a telephonic deposition. The Department and Boeing respond that the superior court acted within its discretion when it admitted Dr. Lambe's telephonic deposition.

WAC 263-12-115(10) and WAC 263-12-117(2) provide:

When testimony is taken by perpetuation deposition, it may be taken by telephone if all parties agree. For good cause the industrial appeals judge may permit the parties to take the testimony of a witness by telephone deposition over the objection of a party after weighing the following nonexclusive factors:

- The need of a party to observe a witness's demeanor.
- Difficulty in handling documents and exhibits.
- The number of parties participating in the deposition.
- Whether any of the testimony will need to be translated.
- Ability of the witness to travel.
- Availability of quality telecommunications equipment and service.

Sears withdrew his objection to the telephonic deposition on January 24, 2018, and renewed his objection the evening before and during the deposition.

10

The IAJ determined Sears's withdrawal of his original objection was an agreement to a telephonic deposition. The trial court did not abuse its discretion in reaching the same conclusion.

The IAJ also considered Sears's objections to the telephonic deposition testimony and weighed the nonexclusive factors of WAC 263-12-115(1) and WAC 263-12-17(2).

> Well, telephone testimony is generally okay as long as both parties have the documents that the witness is going to rely upon and as long as both parties can hear him well Mr. Carson felt like there was bad audio quality in the deposition that was taken by phone previously, so if that could be remedied and if he can have all of the records that the doctor is relying on.
>
> If it turns out that Dr. Lambe is still not capable of traveling then I would agree to do a telephone hearing with both parties present and then I could rule on the objections. If he is capable of traveling then we'd want it to be live at his earliest possible date.

The IAJ decided good cause existed for a telephonic deposition if Dr. Lambe was unable to travel and Sears received the records he requested. The IAJ also determined Boeing and the Department did not act in bad faith in rescheduling the deposition. Because the IAJ acted within its discretion after weighing the WAC, the trial court did not abuse its discretion when it declined to strike Dr. Lambe's testimony.

Sears also argues Boeing disregarded the IAJ's order for Dr. Lambe to appear on June 25, 2018. Because Sears does not support this claim with a citation to the record, we do not consider it.[12]

---

[12] In re Estate of Lint, 135 Wn.2d 518, 531-532, 957 P.2d 755 (1998).

b. <u>Hearsay</u>

During the May 15 deposition, Dr. Lambe testified to interviewing and examining Sears and then drafting a report based on that examination. Sears objected to Dr. Lambe's testimony stating, "It also sounds like he was reading in the records." Dr. Lambe testified, "I have a recollection of performing the interview exam[.] I do not recall specifics[.] As normal practice, I rely upon my report for the specifics."

Before the superior court, Sears objected that Dr. Lambe "was reading verbatim or nearly verbatim from his prepared report. And there is a hearsay objection to just reading the report into the record directly from their witness." He also argued the testimony was hearsay within hearsay. The superior court affirmed the IAJ's decision to overrule Sears's objection to the testimony.

Sears presents a number of arguments for why Dr. Lambe's testimony was inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted."[13] Generally, hearsay is inadmissible at trial.[14]

First, Sears argues Boeing did not meet its burden of showing Dr. Lambe was unavailable to testify in person as required by CR 32 and ER 804. CR 32 provides the deposition of a health care professional may be used at trial even if the health care professional is available to testify if the opposing party had the

---

[13] ER 801(c).
[14] ER 802.

12

opportunity to prepare for cross-examination. ER 804(b)(1) provides an exception to the hearsay rule when a witness is unavailable and "the party against whom the testimony is now offered, or in a civil action or proceeding, [. . .] had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The superior court determined "we're not dealing with hearsay here. Because we have the [Dr. Lambe] testifying in court as to what he heard." Dr. Lambe was unavailable to testify in person but was available to testify by phone at the hearing in front the IAJ. And, Sears had an opportunity to cross-examine Dr. Lambe by phone during the deposition. After Sears received additional reports to review, the IAJ provided him with a second opportunity to cross-examine Dr. Lambe by phone. Because Dr. Lambe was available to testify by phone in front of the IAJ, the hearsay rules for an unavailable witness did not apply. Substantial evidence supports the superior court's determination and it did not abuse its discretion.

Second, Sears argues Dr. Lambe's testimony was inadmissible hearsay and hearsay within hearsay under ER 805 because the report Dr. Lambe relied on was an out of court statement and contained statements of non-testifying witnesses. At trial, he argued it was hearsay within hearsay because the medical report included Sears's out of court statements and summaries of medical records prepared by non-testifying doctors.

The Department argues that ER 803(a)(5) allows Dr. Lambe's testimony. ER 803(a)(5) provides an exception to the hearsay rule and permits a witness with

an insufficient memory to testify by reading a record to "a matter about which a witness once had knowledge." The witness must testify they "made or adopted" the record "when the matter was fresh in the witness' memory."[15]

Because Dr. Lambe testified to drafting the report based on his examination and using the report to refresh his memory, the trial court did not abuse its discretion by determining his testimony was admissible.

Third, Sears argues the testimony was inadmissible because Dr. Lambe's report was not admitted into evidence. ER 803(a)(5) provides that if the court admits the testimony of a witness that uses a record to refresh their recollection, the "record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." Because Sears identifies no authority requiring the report be admitted into evidence and did not offer the report as evidence, this claim fails.

At trial and on appeal, Boeing argues Dr. Lambe's testimony was admissible under ER 803(a)(5) because it was a statement made for the purpose of a medical diagnosis or treatment. Because we determined the superior court did not abuse its discretion in admitting Dr. Lambe's testimony over Sears's objection, we do not reach this argument.

c. <u>Non-Responsive Witness and Reasonable Control</u>

Sears argues Dr. Lambe was a non-responsive witness and the superior court should have stricken his non-responsive testimony. Sears also argues the

---

[15] ER 803(a)(5).

IAJ could not exercise reasonable control over Dr. Lambe's telephonic testimony under ER 611(a). The superior court considered the argument that Dr. Lambe was unresponsive and determined he directly responded to Sears's questions and overruled Sears's objection. Sears does not argue the superior court abused its discretion in overruling his objection and does not explain how the IAJ failed to exercise reasonable control of Dr. Lambe. Because we do "not consider an inadequately briefed argument," we do not consider this argument.[16]

III.     Exhibit 4 - Activity Prescription Form

Exhibit 4 is an Activity Prescription From prepared by Laurie Gwerder, a nurse practitioner and Sears's attending health care provider in November 2016. The prescription restricts the activities Sears could perform at work from January 3, 2017 to February 2, 2017.

During Gwerder's deposition, she used the Form to refresh her memory. Neither party offered Exhibit 4 into evidence during Gwerder's deposition. Later, Sears offered Exhibit 4 during his own testimony before the IAJ. The Department and Boeing objected. The IAJ did not admit Exhibit 4 into evidence because Sears was not the proper witness to testify to the medical opinions in the Form.

At trial, Sears tried again to admit Exhibit 4 into evidence. The superior court asked Sears why Exhibit 4 was relevant and whether "an exception to the hearsay rule that would allow its admission." Sears argued the form was relevant

---

[16] Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

to show he relied on the form when he limited his activity and to show he was entitled to time loss. The Department and Boeing objected to the exhibit arguing it was inadmissible hearsay. The superior court sustained their objections.

Sears argues the superior court should have admitted Exhibit 4 [17] as relevant evidence under ER 401. The Department and Boeing argue the superior court properly excluded Exhibit 4 as inadmissible hearsay because Sears offered Exhibit 4 during his testimony to prove statements made in it were correct rather than offering it during Gwerder's testimony. Boeing also argues this court should not consider this issue because Sears did not provide evidence to support it.

WAC 263-12-115(4) and ER 401 allow the BIIA and superior court to exclude irrelevant evidence. As previously discussed, hearsay is a statement "offered in evidence to prove the truth of the matter asserted."[18] Because Sears offered Exhibit 4 to show he was entitled to time loss, it was inadmissible hearsay. Sears has not identified any applicable exception to the hearsay rule. So, the superior court did not abuse its discretion by affirming the BIIA's decision not to admit Exhibit 4.

---

[17] Sears originally argued the superior court also improperly excluded Exhibit 6. On reply, Sears concedes the record does not support Exhibit 6 was offered. So, we do not address Exhibit 6.

[18] ER 801(c).

16

IV.    Jury Instructions

Sears argues the superior court abused its discretion by giving jury instructions that misstated the law and prevented him from arguing his theory of the case.

We review jury instructions de novo.[19]  We review jury instructions to determine whether it properly stated the law, do not mislead the jury, and if it allowed each party to argue its theory of the case.[20]  "An instruction's erroneous statement of the applicable law is reversible error only where it prejudices a party."[21]  We review a superior court's decision not to give a requested instruction for abuse of discretion.[22]

a.    Jury Instruction 10

Sears argues the superior court improperly provided the jury with Boeing's requested instruction instead of his version.  The Department argues the superior court properly provided jury instruction 10 because it correctly stated the law about proximate cause under the IIA and did not prevent Sears from arguing his theory of the case.

Sears concedes instruction 10 is not an error and argues the instruction demonstrates the superior court's misunderstanding of the IIA, and he was

---

[19] McDonald, 104 Wn. App. at 622 (citing Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995)).

[20] Joyce v. Dep't of Corr., 155 Wn.2d 306, 323, 119 P.3d 825 (2005).

[21] McDonald, 104 Wn. App. at 622 (citing Hue, 127 Wn.2d at 92).

[22] Gomez, 13 Wn. App. 2d at 650.

prevented from presenting his case. Because Sears did not object to this instruction, he did not preserve his claim for appellate review. We decline to review it.[23]

    b. <u>Jury Instruction 13</u>

Sears argues jury instruction 13 improperly expands RCW 51.32.090 requirements for time loss compensation. Initially, Sears did not challenge instruction 13. Later, he argued the instruction properly included the word "performed" but improperly excluded the word "obtained." He argued the two words have different meanings and that the instruction should state, "Temporary Total Disability is a disability that temporarily incapacitates a work[er] from performing gainful occupation or obtaining." The superior court determined "obtained" was unnecessary because "performing" allowed Sears to make the same argument. Jury instruction 13 provided:

> Time loss compensation is payable to a worker while temporarily totally disabled and undergoing medical treatment as a direct result of an accepted industrial injury. Temporary total disability is a disability that temporarily incapacitates the worker from performing any work at any gainful occupation. A worker is not totally disabled solely because he is unable to return to his former occupation. Instead, a worker is totally disabled if he or she is not capable of reasonably continuous gainful employment at any kind of generally available work.

First, Sears argues the sentence, "Time loss compensation is payable to a worker while temporarily totally disabled and undergoing medical treatment as a

---

[23] RAP 2.5(a); <u>State v. McFarland</u>, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

direct result of an accepted industrial injury," impermissibly expands what is required to provide time loss benefits under RCW 51.32.090(4)(b). He argues instead of "as a direct result," the instruction should state "proximately caused by." RCW 51.32.090(4)(b) provides the procedure for employers to offer available work or temporary total disability payments to employees. It does not provide any standard for determining whether an employee is temporarily totally disabled as a result of their injury or whether an injury caused a disability. Also, the court gave instruction 12.

> A cause of a condition or disability is a proximate cause if it is related to the condition or disability in two ways: (1) the cause produced the condition or disability in a direct sequence unbroken by any new, independent cause, and (2) the condition or disability would not have happened in the absence of the cause.

> There may be one or more proximate causes of a condition or disability. For a worker to recover benefits under the Industrial Insurance Act, the industrial injury must be a proximate cause of the alleged condition or disability for which benefits are sought. The law does not require that the industrial injury be the sole proximate cause of such condition or disability.

Reading instructions 12 and 13 together, the jury would know "proximate cause" and "directly" or "direct result" to have the same meaning. So, instruction 13 properly stated the law, was not misleading, allowed Sears to argue his theory of the case, and was not prejudicial. We find no error.

c. Jury Instruction 14

Sears argues jury instruction 14 misstates the law and the superior court should have given his proposed jury instruction for unreasonable delay.

19

The Department and Boeing claim this court should not review Sears's challenge to instruction 14 because he did not object to it at trial. Sears argues he took exception to "D-19, which turned into jury instruction fourteen." At trial, the judge proposed instruction D-19.

> MR. CARSON: I'm going to take exception to that, Your Honor's granting that.
> JUDGE STEINER: Okay, and --
> MR. CARSON: Not D-19, the previous one, 18.
> JUDGE STEINER: Oh, you already have.
> MR. CARSON: Okay.
> JUDGE STEINER: So how about D-19?
> MR. CARSON: I'm, it --
> JUDGE STEINER: Any objection to D-19, is what I'm asking.
> MR. CARSON: No, Your Honor.

Because Sears did not object to instruction 14, he did not preserve his claim for appellate review. We decline to review it.[24]

Sears also argues the superior court should have given three proposed instructions that the jury needed to determine whether Boeing unreasonably delayed the payment of time loss compensation benefits to Sears.

First, Sears proposed an instruction stating, "Where temporary disability compensation is payable. First payment thereof shall be mailed within 14 days after receipt of the claim." At trial and on appeal, Sears argues the instruction was necessary for the jury to determine "whether there was an unreasonable delay." At trial, he said, "The 14 days gives a yardstick for what would be reasonable or unreasonable." The superior court determined it was not necessary for the jurors

---

[24] RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).

to consider "that he wasn't paid within 14 days" because "there was not a dispute as to whether it was paid or not." Second, Sears proposed an instruction stating, "A penalty for self-insured employer is appropriate if the [. . .] self-insured unreasonably delayed the payment of benefits." And, "Benefits will not be considered unreasonable delay if paid within three calendar days." The superior court determined the three-day requirement was "not necessary for the jury" because "[t]here was never a payment."

> Jury instruction 14 stated:
>
> The Department of Labor and Industries may impose a penalty if a self-insurer unreasonably delays or refuses to pay benefits as they become due. The Department shall issue an order determining whether there was an unreasonable delay or refusal to pay benefits within thirty days upon the request of the claimant.
>
> A delay in payment of benefits is not unreasonable if the employer possessed a genuine doubt from a legal or medical standpoint as to its liability for benefits.

The jury could either find Boeing unreasonably delayed paying benefits or Boeing refused to pay benefits. The superior court denied each of the proposed instructions because it was not necessary for the jury to consider whether there was an unreasonable delay when Boeing refused to pay. The jury did not need to determine the number of days of delay because Boeing never paid Sears the contested payments. So, the superior court did not abuse its discretion in denying these instructions.

Third, Sears proposed an instruction stating, "A self-insured employer must provide SIF-2 report of accident to workers injured on the job; and must report their worker's industrial injuries illness to the Department with SIF-2s." He argued the

21

instruction was important for the jury to determine whether there was a compensable claim for time loss. The superior court denied this instruction because it would "cause more confusion to the jury. It doesn't sound necessary for either of these claims that you've mentioned." Because it was likely to confuse the jury, the superior court did not abuse its discretion in denying the instruction. Also, Sears does not explain how the absence of this instruction impaired his ability to argue his theory of the case to the jury.

### d. Proposed Jury Instruction 18

Sears argues the superior court improperly denied his proposed jury instruction 18.[25] The complete text of proposed jury instruction 18 is not in the record. Because Sears did not provide an adequate record to review this claim, we decline to review it.[26]

### e. Special Verdict Form

Sears argues the superior court should have given his proposed special verdict form and not the one proposed by Boeing. Specifically, he argues the first question on the form improperly includes the words "not responsible" and improperly excludes the word "aggravation."

---

[25] In his brief, Sears argues proposed jury instruction 19 was improperly denied. But, the proposed instruction he references is actually proposed jury instruction 18.

[26] Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

As an initial matter, the Department argues that because Sears did not place his proposed verdict form in the record, this court should not review the issue. A party dissatisfied with a special verdict form "has a duty to propose an appropriate alternative."[27] We may review a party's claimed special verdict error when that party "stat[es] distinctly the matter to which [counsel] objects and the grounds of [counsel's] objection."[28] Because Sears stated the grounds for his objection and provided the terms he would use to rephrase the question, we review his claim.

"A special verdict form is sufficient if it allows the parties to argue their theories of the case, does not mislead the jury, and properly informs the jury of the law to be applied."[29] "It is a reversible error when [. . .] the special verdict form misstates the law and prejudice[s] a party."[30] "Although a special verdict form need not recite each and every legal element necessary to a particular cause of action where there is an accurate accompanying instruction, it may not contain language that is inconsistent with or contradicts that instruction."[31]

The BIIA finding of fact states, "Mr. Sears' cervical radiculopathy was not proximately caused or aggravated by his November 4, 2016 industrial injury."  In superior court, Sears objected to question number one on the special verdict form.

---

[27] City of Bellevue v. Raum, 171 Wn. App. 124, 145, 286 P.3d 695 (2012).
[28] CR 51(f); Raum, 171 Wn. App. at 145 (quoting Wickswat v. Safeco Ins. Co., 78 Wn. App. 958, 966-67, 904 P.2d 767 (1995)).
[29] Raum, 171 Wn. App. at 145 (citing Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995)).
[30] Theon v. CDK Construction Services, Inc., 13 Wn. App. 2d 174, 179, 466 P.3d 261 (2020).
[31] Capers v. Bon Marche, 91 Wn. App. 138, 144, 955 P.2d 822 (1998).

He argued the BIIA's finding supports phrasing the question as "[c]ervical radiculopathy proximately caused [or aggravated] by the November 4th, 2016 injury." The superior court considered whether the terms "proximately caused" and "aggravated" should be included in the special verdict form where "the other instructions talk about when Boeing would be responsible for this, if it was proximately caused, if it was aggravated." Sears conceded that those concepts were covered in the other jury instructions. The court determined that neither the question proposed by Sears or Boeing "mimic" the BIIA's finding. It determined Boeing's question was more similar to the BIIA's finding than Sears's question and chose Boeing's. Question number one read, "Was the Board correct when it determined that Boeing was not responsible for the condition diagnosed as cervical radiculopathy?"

Sears argues the special verdict form misstates the law because the phrase "'not responsible' suggests a legal conclusion." And, Sears argues the exclusion of the phrase "or aggravated" prevented him from properly presenting his theory of the case. The jury instructions do not use the word "aggravated." But, using different words, the instructions provide a tool for the jury to decide whether Boeing was responsible for aggravating Sears's existing cervical radiculopathy. The instructions provide:

> If you find that: (1) before the industrial injury, Chris Sears had a condition that was not disabling or requiring treatment; and (2) because of the industrial injury the pre-existing condition was lighted up or made active; then Chris Sears is eligible for benefits for his need for treatment even though his need for treatment may be

24

greater than it would have been for a person in the same circumstances without that pre-existing condition.

The instructions also provide, "The law does not require that the industrial injury be the sole proximate cause of such condition or disability." When read as a whole, these instructions ask the jury to determine whether the industrial injury aggravated Sears's preexisting condition. We presume jurors follow instructions.[32] Because the jury could make this determination without the exact phrase "or aggravated," the exclusion of that phrase did not prevent Sears from presenting his theory of the case. The superior court did not abuse its discretion in providing the special verdict form.

V.    Cumulative Error

Sears argues the cumulative effect of the superior court's rulings substantially prejudiced him and denied him a fair trial. In criminal cases, a defendant may be entitled to a new trial if cumulative errors deny the defendant a fair trial.[33] Recently, in Rookstool v. Eaton, we extended the cumulative error doctrine to civil cases.[34] "The test to determine whether cumulative errors require reversal [. . .] is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial."[35] "Cumulative error is not a method for considering unpreserved issues on appeal. It is simply a recognition that the net

---

[32] Diaz v. State, 175 Wn.2d 457, 474, 285 P.3d 873 (2012).

[33] State v. Saunders, 120 Wn. App. 800, 826, 86 P.3d 232 (2004).

[34] 12 Wn. App. 2d 301, 310, 475 P.3d 1144 (2020).

[35] Rookstool, 12 Wn. App. 2d at 310 (quoting In re Pers. Restraint of Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014)).

impact of multiple small errors can still result in a prejudicial impact on the trial."[36] Here, we do not find cumulative errors that substantially prejudiced Sears.

In addition to the previously discussed claims, Sears argues the superior court improperly excluded or struck evidence, questions, testimony, jury instructions, and that the superior court acted with "sublime bias" by interrupting his counsel. Because Sears does not cite to authorities to support these claims, we decline to review it.[37]

CONCLUSION

We affirm the superior court.

_Leach, J._

WE CONCUR:

_Chun, J._ _Appelwick, J._

---

[36] Rookstool, 12 Wn. App. 2d at 311-12.
[37] DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).